JOHN W. HUBER, United States Attorney (#7226)
JOHN K. MANGUM, Assistant United States Attorney (#2072)
185 South State Street, Suite 300
Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Email: john.mangum@usdoj.gov

ERIN HEALY GALLAGHER, *pro hac vice*
DC Bar No. 985670, erin.healygallagher@usdoj.gov
ERIN R. HINES, *pro hac vice*
FL Bar No. 44175, erin.r.hines@usdoj.gov
CHRISTOPHER R. MORAN, *pro hac vice*
NY Bar No. 5033832, christopher.r.moran@usdoj.gov
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 7238
Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 353-2452

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RAPOWER-3, LLC, INTERNATIONAL AUTOMATED SYSTEMS, INC., LTB1, LLC, R. GREGORY SHEPARD, NELDON JOHNSON, and ROGER FREEBORN,<br><br>Defendants. | Civil No. 2:15-cv-00828 DN<br><br>**UNITED STATES' RESPONSE TO DEFENDANTS' MOTION TO QUASH SUBPOENA (ECF DOC. 65)**<br><br>Judge David Nuffer<br>Magistrate Judge Brooke C. Wells |

On July 21, 2016, Defendants RaPower-3, LLC, International Automated Systems, Inc.,

LTB1, LLC, and Neldon Johnson ("Defendants") filed a motion to quash or modify subpoenas

issued by the United States to seven banks: Bank of American Fork, Zions Bank, JPMorgan

Chase Bank, Key Bank, N.A., Cyprus Credit Union, Millard County Credit Union, and one unnamed bank.[1] This motion should be denied because it is flawed, substantively and procedurally.

**I.      Background for the bank subpoenas.**

**A.   The United States' claims in this case.**

The United States filed its complaint in this case on November 23, 2015 seeking to enjoin defendants pursuant to 26 U.S.C. §§ 7402 and 7408 from (among other things) organizing, promoting, and selling a "solar energy scheme." (ECF Docs. 1 and 35). As described in the complaint, the solar energy scheme purportedly offers a "disruptive and revolutionary" approach to capturing and using solar energy. The technology underlying the solar energy scheme, purportedly invented by Neldon Johnson, uses "solar thermal lenses" on International Automated Systems, Inc.'s (IAS) "solar towers." IAS permits RaPower-3, LLC to sell the lenses to customers who purportedly lease the lenses to LTB1, LLC. In promoting and selling the solar energy scheme, the defendants make statements to customers regarding the technology, its value, and the applicability of federal tax benefits (deductions and credits) based on the customers' purchase and participation in the solar energy scheme. (ECF Docs. 1 and 35).

The United States alleges that Defendants' technology is actually a sham: it is not now and has never been operational for any purpose that Congress intended to encourage through tax deductions or credits. (*E.g.*, ECF Doc. 1 ¶¶ 45-55.) Therefore, among the key issues in this case

---

[1] The United States also issued a subpoena to Wells Fargo Bank, N.A., which is likely the seventh and unnamed bank. Defendants subsequently moved to quash or modify that subpoena on July 27, 2016. (ECF Doc. 70.) Accordingly, the United States will also address the merits of Defendants' motion to quash or modify the Wells Fargo subpoena in the appropriate response to that particular motion.

is whether Defendants are promoting sham technology as the basis for an abusive tax scheme, with knowledge or reason to know that their statements are false or fraudulent as to a "material matter" under the internal revenue laws. *See* 26 U.S.C. § 6700(a)(2)(A); *United States v. Hartshorn*, 751 F.3d 1194, 1198 (10th Cir. 2014); (ECF Doc. 1 ¶¶ 157-198). "Material matters are those which would have a substantial impact on the decision-making process of a reasonably prudent investor and include matters relevant to the availability of a tax benefit." *United States v. Campbell*, 897 F.2d 1317, 1320 (5th Cir. 1990). Here, a "material matter" is the nature and viability of Defendants' purported solar energy technology which is the basis of their scheme. The parties agreed that discovery would be needed on statements made by Defendants regarding the so-called technology and about any related federal tax deductions, credits or benefits they promote. *See* 26 U.S.C. § 6700(a)(2)(A); (ECF Doc. 1 ¶¶ 157-198; ECF Doc. 35 ¶ 2(a)).

Another key issue is whether Defendants made or furnished "gross valuation overstatements" with respect to any "material matter" involved in the scheme, 26 U.S.C. 6700(a)(2)(B) & (b). A gross valuation overstatement is any statement as to the value of property or services if the value stated exceeds 200 percent of the amount determined to be the correct valuation, and the value of such property or services is directly related to the amount of any deduction or credit for federal income tax purposes. § 6700(b)(1). There is a strict liability standard for making or furnishing a gross valuation overstatement. *Autrey v. United States*, 889 F.2d 973, 981 (11th Cir. 1989); *Gates v. United States*, 874 F.2d 584, 586 (8th Cir. 1989) (rejecting a defendant's attempt to avoid liability for making or furnishing a gross valuation overstatement because he did not know that the valuations were overstatements). One example relevant to this case is that Defendants tell customers that the "full . . . purchase price for a lens"

is $3,500. (ECF Doc. 22 ¶ 57.) To determine whether that full purchase price is more than 200

percent of the actual value of the lens, § 6700(b)(1), the United States must therefore discover

information on topics like Defendants' costs to produce and market a lens.

Because the United States believes the solar energy scheme is abusive, one aspect of the

relief requested is disgorgement of Defendants' gross receipts from the scheme. Therefore,

another key issue and topic of discovery in this case is the extent of Defendants' gross receipts

"from their sale of 'solar thermal lenses' and 'solar towers' and other related technologies" (ECF

Doc. 35 ¶ 2(a).). The United States has been issuing routine, proportional discovery on these

critical topics, including serving the subpoenas that are the subject of this motion.

**B.   The bank subpoenas seek documents relevant to the United States' claims in this case.**

On June 13, 2016, the United States notified all Defendants that it intended to serve

subpoenas to banks where any Defendant engaged in financial transactions or held accounts. (*See*

Ex. A, a true and correct copy of emails dated June 13, 2016, from counsel for the United States

to counsel for Defendants with such notice.) A true and correct copy of one of the subpoenas

(with appropriate redactions pursuant to Fed. R. Civ. P. 5.2), to Bank of American Fork, is

attached as Exhibit B. The subpoenas request three categories of documents, all directly relevant

to the key issues of whether Defendants made false or fraudulent statements or gross valuation

overstatements about material matters in furtherance of the solar energy scheme and the extent of

Defendants' gross receipts from the scheme: copies of all documents and records for accounts

held in the name of any Defendant in this case, plus two additional companies that the United

States has reason to believe have information relevant to the cash flow of the solar energy

scheme; copies of all documents and records for any account on which Gregory Shepard, Neldon

Johnson, or Roger Freeborn is a signatory; and copies of documents for specific accounts known to the United States to be held in the name of any one specific Defendant. (Ex. B ¶ II.) The only variation in the documents requested by the bank subpoenas is the last request in each.

The subpoenas were dated to be served on June 20, 2016, and each required a response on July 22, 2016. (Ex. B.) The place of compliance for four of the seven subpoenas is the District of Utah. (Ex. A.) The remaining three subpoenas require compliance in Arizona, Ohio, and Indiana. (*Id.*) Defendants filed their motion to quash on July 15, 2016, without seeking, much less holding, a meet-and-confer with counsel for the United States regarding any objections they had to the bank subpoenas. To date, at least three banks have produced documents.

Defendants' sole argument in favor of quashing the bank subpoenas is that they seek documents that would "disclos[e] a trade secret or other confidential research, development, or commercial information" belonging to Defendants, *see* Fed. R. Civ. P. 45(d)(3)(B)(i), including "lenses," "confidential and commercial communications and actions undertaken by Defendants" (ECF Doc. 65 at 3) and "costs and expenditures associated" with Defendants' purported technology (*id.* at 5). Even if this unsupported assertion were true, both 1) Defendants' bank records, generally, and 2) any potential "trade secrets" or confidential communications or action about their so-called solar technology that might be revealed in their bank records are at the very heart of key issues in this litigation: whether Defendants have made false or fraudulent statements or gross valuation overstatements while promoting the abusive tax scheme and the extent of Defendants' gross receipts from their scheme to be disgorged.

With few exceptions, Defendants' motion to quash the bank subpoenas consists of text copied and pasted from the text of their untimely, unsubstantiated motion to quash "the June 2,

2016" subpoena. (*Compare* ECF Doc. 65 *with* ECF Doc. 62.) As in the latter motion, Defendants

offer a blanket objection to the bank subpoenas without actually evaluating each category of

documents on its merits. Defendants do not provide any support for their argument that every

single responsive document is somehow confidential or related to their trade secrets or

confidential and commercial activities. Even if they had made such a showing, Defendants do

not provide law or facts suggesting that the United States is not entitled to receive them in

discovery.

## II.    Defendants' motion to quash fails to meet substantive and procedural requirements and should be denied.

### A.   Defendants' motion is unsupported by law or fact.

The party moving to quash or modify a subpoena has the burden of establishing "that the

information sought is confidential and that its disclosure will result in a clearly defined and

serious injury to the moving party." *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 592

(D. Kan. 2003); *accord Centurion Indus. v. Steurer*, 665 F.2d 323, 325 (10th Cir. 1981) ("To

resist [Rule 45] discovery under [then-]Rule 26(c)(7), a person must first establish that the

information sought is a trade secret and then demonstrate that its disclosure might be harmful.");

*Innovative Therapies, Inc. v. Meents*, 302 F.R.D. 364, 380 (D. Md. 2014) ("Trade secret or

commercially sensitive information must be important proprietary information and the party

challenging the subpoena must make a strong showing that it has historically sought to maintain

the confidentiality of this information." (quotations omitted). Such a claim "must be expressly

made and supported by a sufficient description of the nature of the documents, communications,

or things not produced so as to enable the demanding party to contest the claim." *Transcor, Inc.*,

212 F.R.D. at 592. (quotation omitted); *see also Fanjoy v. Calico Brands, Inc.*, 2006 U.S. Dist.

LEXIS 55158, 9-10 (D. Utah Aug. 7, 2006) (reciting specific facts offered in support of a finding that subpoenaed information was "confidential"); *R&D Business Sys. v. Xerox Corp.*, 152 F.R.D. 195, 197 (D. Colo. 1993) (reciting specific facts to show that subpoenaed information was a "trade secret" under Colorado law).

      In contrast to the precise articulation of both secrecy and serious harm required by the legal standard, Defendants offer only broad *assertions* that the documents sought by the subpoenas contain purportedly secret information. They do not offer facts supported by affidavits, or even specific legal arguments, to provide a foundation on which this Court could determine that any of the bank subpoenas request trade secrets. Defendants do not specify exactly which documents or information should be protected or why. They do not even articulate *which* moving Defendants' account documents may reflect the purported trade secret or confidential information. Further, Defendants claim that the bank subpoenas request "information that if produced will expose sensitive financial information associated with Defendants' [unspecified] trade secrets and confidential information." (*See* ECF Doc. 65 at 3.) But they offer neither facts nor law to show that such disclosure to the United States in discovery is a "clearly defined and serious injury." It is not. It is difficult to imagine how ordinary bank records could constitute trade secrets, let alone how defendants can assert that the United States cannot discover financial information that directly goes to the heart of claims in the case, and which could reveal how much money they made from selling their scheme. Those are facts that need to be revealed in this case, not buried. Their conclusory statements are "self-serving and insufficient" to show that they are entitled to relief. *See Innovative Therapies, Inc.*, 302 F.R.D. at 381. ("ITI's conclusory statement that 'ITI's financial records are confidential and the release of

such records subjects ITI to annoyance, embarrassment, and oppression' is self-serving and insufficient.")

For all of these reasons, Defendants do not meet their burden to show that the bank subpoenas even call for trade secret or confidential information, or – assuming they did – that Defendants would suffer serious harm from disclosure of such trade secrets or confidential information to the United States. But even if Defendants had made such a showing, it "does not necessarily preclude the discovery of such information. There is no absolute privilege for trade secrets and similar confidential information." *Dr. Greens, Inc. v. Spectrum Labs.*, LLC, 2012 U.S. Dist. LEXIS 106167, at *8 (D. Kan. July 31, 2012) (footnotes and quotation omitted).

### B.   Defendants' proposed modification for compliance should be denied.

In the event that – unlike the Defendants here – a party *does* show that a subpoena would require disclosure of a "trade secret or other confidential research, development, or commercial information," the court may modify conditions of compliance for a subpoena instead of quashing or modifying the subpoena itself if the serving party "shows a substantial need for the . . . material that cannot be otherwise met without undue hardship." Fed. R. Civ. P. 45(d)(3)(C). The subpoenaed bank records are highly relevant to the claims and defenses in this case because they are probative of whether Defendants made or furnished false or fraudulent statements or gross valuation overstatements while promoting their abusive tax scheme and of Defendants' gross receipts from the scheme. Even assuming that Defendants had shown that the subpoenaed documents contain information is secret – which they did not – the United States has a substantial need for the documents that cannot be met without undue hardship. The premise of the well-pled allegations in this case is that Defendants make "false or fraudulent statements"

8

and "gross valuation overstatements" regarding material matters in federal tax law pursuant to their solar energy scheme and substantially interfere with the enforcement of the internal revenue laws, all for their own enrichment.

Defendants themselves do not dispute that the documents requested by the bank subpoenas are relevant to this litigation. (*See generally* ECF Doc. 65; ECF Doc. 35 ¶ 2(a)). Defendants ask, however, that if the Court is considering denying their motion to quash the subpoenas, the Court instead modify the procedures for compliance. Even if Defendants could meet the standard for modifying the bank subpoenas – which, as described above, they do not – their proposal for altering the method of compliance invites abuse and should be denied. Defendants ask that they "be granted additional time . . . to review and properly designate the documents and information *in Defendants' possession*." (ECF Doc. 65 at 5 (emphasis added)). This request seems to suggest that Defendants believe that they should be given the opportunity to review any third-party documents and to make confidentiality designations per the standard protective order *before* such documents are produced to the United States. (*Id.*; *see also id.* at 3-4 ("disclosure *by Defendants* will expose confidential and commercial communications" and asking that the Court modify the subpoenas "to allow *Defendants* to produce the requested documents" (emphases added)).) Defendants cite no basis under Fed. R. Civ. P. 45, in DUCivR 45-1, in the standard protective order, or in case law for this suggestion.

The United States believes that the standard protective order should be suspended for purposes of this litigation. (ECF Docs. 39, 44.) But even if it is not suspended, the standard protective order does not provide the relief Defendants seek. It does not allow one party to review and redact documents subpoenaed from a third party before those documents are

produced to the party that issued a subpoena. Instead, only the "third party producing documents or things . . . pursuant to a subpoena . . . may designate said documents [or] things . . . as CONFIDENTIAL INFORMATION or CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY." (Standard Protective Order ¶ 14.)

In light of the specific terms of the standard protective order, and Defendants' failure to articulate any sound basis for their motion, there is no reason to delay a decision on the motion to quash the bank subpoenas pending its decision on the United States' motion for relief from the standard protective order. Whether the standard protective order is suspended or is in place for this litigation, Defendants have not shown any reason for their proposed modification, or any modification to the subpoenas or the method for complying with them.

### C.   Defendants' motion should be dismissed for procedural failures.

A "person subject to or affected by a subpoena" may seek relief from the "court for the district where compliance is required" if the subpoena purportedly requires disclosing "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B). Three of the seven bank subpoenas (to Wells Fargo Bank in Arizona, Key Bank in Ohio, and J.P. Morgan Chase Bank in Indiana) seek compliance outside the District of Utah. (*See* Ex. A.) Therefore, Defendants' motion to quash those subpoenas should be denied.

Further, DUCivR 37-1(a) states that in order for the court to entertain a discovery motion, when all parties are represented by counsel, there must be "a statement [in the motion] showing that counsel making the motion has made a reasonable effort to reach agreement with opposing counsel on the matters set forth in the motion." *See also* Fed. R. Civ. P. 26(c)(1) (requiring a party moving for a protective order to certify "that the movant has in good faith conferred or

attempted to confer with other affected parties in an effort to resolve the dispute without court

action"). Defendants' motion contains no such statement. (*See* ECF Doc. 65.) Defendants had

notice, no later than June 13, 2016, of the United States' intent to issue the bank subpoenas on

June 20. But counsel for Defendants made no attempt to even discuss their objections to the

subpoenas, much less to reach an agreement with counsel for the United States before filing their

motion to quash on July 15, 2016.

III.     **Conclusion**

        For all of the substantive and procedural reasons above, Defendants' motion to quash the

bank subpoenas (ECF Doc. 65) should be denied and the subpoenas should not be modified in

any respect.

Dated: August 1, 2016                           */s/ Erin Healy Gallagher*
                                                ERIN HEALY GALLAGHER
                                                DC Bar No. 985760
                                                Email: erin.healygallagher@usdoj.gov
                                                Telephone:  (202) 353-2452
                                                ERIN R. HINES
                                                FL Bar No. 44175
                                                Email: erin.r.hines@usdoj.gov
                                                Telephone:  (202) 514-6619
                                                CHRISTOPHER R. MORAN
                                                New York Bar No. 5033832
                                                Email: christopher.r.moran@usdoj.gov
                                                Telephone:  (202) 307-0834
                                                Trial Attorneys, Tax Division
                                                U.S. Department of Justice
                                                P.O. Box 7238
                                                Ben Franklin Station
                                                Washington, D.C.  20044
                                                FAX: (202) 514-6770
                                                ***ATTORNEYS FOR THE***
                                                ***UNITED STATES***

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on August 1, 2016, the foregoing document was electronically filed with the Clerk of the Court through the CM/ECF system, which sent notice of the electronic filing to the following:


Justin D. Heideman
HEIDEMAN & ASSOCIATES
2696 North University Avenue, Suite 180
Provo, Utah 84604
jheideman@heidlaw.com
**ATTORNEY FOR RAPOWER-3, LLC,**
**INTERNATIONAL AUTOMATED SYSTEMS, INC.,**
**LTB1, LLC, and NELDON JOHNSON**


Donald S. Reay
MILLER, REAY & ASSOCIATES
donald@reaylaw.com
**ATTORNEY FOR R. GREGORY SHEPARD**
**AND ROGER FREEBORN**


                             */s/ Erin Healy Gallagher*
                             ERIN HEALY GALLAGHER
                             Trial Attorney