Denver C. Snuffer, Jr. (#3032) denversnuffer@gmail.com
Steven R. Paul (#7423) spaul@nsdplaw.com
Daniel B. Garriott (#9444) dbgarriott@msn.com
Joshua D. Egan (15593) Joshua.d.egan@gmail.com
**NELSON, SNUFFER, DAHLE & POULSEN**
10885 South State Street
Sandy, Utah 84070
Telephone: (801) 576-1400
Facsimile: (801) 576-1960
*Attorneys for Glenda Johnson*

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RAPOWER-3, LLC, INTERNATIONAL AUTOMATED SYSTEMS, INC., LTB1, LLC, R. GREGORY SHEPARD, and NELDON JOHNSON,<br><br>Defendants. | Civil No. 2:15-cv-00828-DN-EJF<br><br>**RESPONSE TO RECEIVER'S REPORT AND RECOMMENDATION AND MOTION TO INCLUDE AFFILIATES AND SUBSIDIARIES IN THE RECEIVERSHIP ESTATE**<br><br>Judge David Nuffer |

COME NOW XSun Energy, LLC ("XSun") and Solco I, LLC ("Solco"), Solstice LLC and Glenda Johnson, who have been named as "Receivership Entities" without any due process, and hereby respond to Receiver's Report and Recommendation.  Counsel has been dismissed as counsel for the remaining Defendants, including Neldon Johnson who has appeared pro se.

**I.      The Receiver's Recommendation Violates Due Process.**

The Receiver's motion, in essence, asks this Court to ignore the fundamental rights of due process, ignore the government's decision when they filed this case to not name as defendants Solco I and XSun despite knowing of them and using as exhibits documents written for/by them,

1

skip any claim or finding of alter ego or opportunity to defend against that claim, and leap to the conclusion that these unnamed parties are equally liable for the judgment entered against those named.  Such a leap violates due process.  "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified."[1] It is equally fundamental that the right to notice and an opportunity to be heard "must be granted at a meaningful time and in a meaningful manner."[2]

In *Fuentes*, the primary question was whether certain state statutes, including the Florida and Pennsylvania replevin statutes, were constitutionally defective in failing to provide for hearings" at a meaningful time."[3] Neither the Florida nor the Pennsylvania statute provided for notice or an opportunity to be heard *before* the seizure. The issue is whether procedural due process in the context of these cases requires an opportunity for a hearing *before* the State authorizes its agents to seize property in the possession of a person upon the application of another.[4]

> "The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decision making when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment -- to minimize substantively unfair or mistaken deprivations of property, a danger that is especially great when the State seizes goods simply upon the application of and for the benefit of a private party. So viewed, the prohibition against the deprivation of property without due process of law reflects the high value, embedded in our constitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference. "If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented. At a later hearing, an individual's possessions can be returned to him if they were unfairly or mistakenly taken in the first place. Damages may even be awarded to him for the wrongful deprivation. But no later hearing and no damage award can undo the fact

---

[1] Id. at 81 (citing *Baldwin v. Hale*, 1 Wall. 223, 233. See *Windsor v. McVeigh*, 93 U.S. 274; *Hovey v. Elliott*, 167 U.S. 409; *Grannis v. Ordean*, 234 U.S. 385.)

[2] Id. (citing *Armstrong v. Manzo*, 380 U.S. 545, 552.)

[3] Id.

[4] Id.

that the arbitrary taking that was subject to the right of procedural due process has already occurred. "This Court has not … embraced the general proposition that a wrong may be done if it can be undone." *Id.* (citing *Lynch v. Household Finance Corp.*, 405 U.S. 538, 552. *Stanley v. Illinois*, 405 U.S. 645, 647.)

This is not a novel principle of constitutional law.  The right to a prior hearing has long been recognized by this Court under the Fourteenth and Fifth Amendments.  Although the Court has held that due process tolerates variances in the *form* of a hearing "appropriate to the nature of the case," *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 313, and "depending upon the importance of the interests involved and the nature of the subsequent proceedings [if any]," *Boddie v. Connecticut*, 401 U.S. 371, 378, the Court has traditionally insisted that, whatever its form, opportunity for that hearing must be provided before the deprivation at issue takes effect.[5]

In past briefings, Plaintiff has argued that because Defendants have previously argued that Solco I and XSun Energy should not be subject to the asset freeze, that these non-parties have fully received all required due process.  The Plaintiff's argument misses both critical steps.  The asset freeze imposes a penalty without either Solco I or XSun Energy having been afforded the notice of a complaint against them, an opportunity to answer or move to dismiss, discovery, motion practice, or a trial to hear the claims against them or an opportunity to prove their claimed defenses before a fact finder.   This is all the more alarming because both Solco I and XSun were known to

---

[5]    *See   e.g.   Bell v. Burson*, 402 U.S. 535, 542; Wisconsin v. Constantineau, 400 U.S. 433, 437]; *Goldberg v. Kelly*, 397 U.S. 254;*Armstrong v. Manzo*, 380 U.S., at 551; *Mullane v. Central Hanover Tr. Co.*, supra, at 313; *Opp Cotton Mills v. Administrator*, 312 U.S. 126, 152-153; *United States v. Illinois Central R. Co.*, 291 U.S. 457, 463; *Londoner v. City & County of Denver*, 210 U.S. 373, 385-386. See *In re Ruffalo*, 390 U.S. 544, 550-551.  "That the hearing required by due process is subject to waiver, and is not fixed in form does not affect its root requirement that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event."  *Boddie v. Connecticut*, supra, at 378-379 (emphasis in original).

the Plaintiff long before this matter was filed.  The Plaintiff used exhibits throughout discovery and trial written for/by Solco I and XSun, but deliberately chose not to include them in this case.

Both of these entities were deliberately omitted from this case by the Plaintiff without the Plaintiff ever giving an explanation.[6]  And since no explanation was given, these non-entities are entitled to benefit of an adverse inference that the Government intentionally and strategically omitted them to avoid facing the obvious defenses these parties would assert. Both these parties sought, obtained and relied on advice letters from legal counsel.  Because the other named Defendants were not the recipients of the legal advice, the Plaintiff chose to omit Solco I and XSun as parties. Moreover, neither of these entities ought to be affected by orders entered against others who were afforded the opportunity to participate as parties to the case.

In *United States v. Mesadieu*, 108 F.Supp 3d. 1113 (M.D. Fla. 2016), the trial court questioned whether it had authority to disgorge  revenue "obtained by Mesadieu's companies – entities that are not before the Court."[7] The Government  urged the trial court to include the non-parties alleging that "Mesadieu is the sole owner of the companies and uses his companies as a vehicle for fraud."[8] But the Government did not join the companies as a defendant."[9] Like *Mesadieu*, the Government failed to join non-entities Solco I and XSun, yet sought disgorgement against them under the same reasoning in *Mesadieu* (i.e., alleging that the named defendants used

---

[6] *See United States v. Mesadieu*, 180 F. Supp. 3d 1113, 1123 (M.D. Fla. 2016) (Because the United States failed to join defendant's companies, Court questioned whether it would have had jurisdiction to order disgorgement of revenue obtained by defendant's non-party companies and entities that were not before the court.*); see also Bolsa Res., Inc. v. AGC Res., Inc.,* 2013 U.S. Dist. LEXIS 137604, *7 (Colo.) (District court declined to order non-party corporations to disgorge stock to satisfy judgment.)

[7] *Mesadieu*, 180 F. Supp. 3d at 1123.

[8] Id.

[9] Id.

the companies as a vehicle of fraud.) Fortunately, this Court properly refused to order disgorgement against these entities in its final order.[10]

Adherence to due process was short-lived, however, as now the Receiver is attempting to gift the government the relief it sought at the end of trial by including Solco I and XSun into the Receivership Estate. If the Receiver's motion is granted, then Solco I and XSun will be no differently situated than if disgorgement was ordered against them at the close of trial, all without providing Solco I and XSun the benefit of raising defenses that uniquely apply to them. For example, the XSun was the client referred to in the "McKonkie Memorandum," placing XSun I in a stronger position assert a reliance of counsel defense. Both these entities had written legal advice and followed it.

Additionally, inclusion of these entities and Glenda Johnson goes well beyond the asset freeze. Once these entities and Mrs. Johnson are included, the Receiver will take complete "custody, control, and possession of all assets, bank accounts or other financial accounts, contents of safe deposits boxes, books, records, and all other documents or instruments"[11] allowing the receiver to "direct and develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Property"[12] **without a showing that the property belonging to these entities and Mrs. Johnson are ill-gotten gains subject to disgorgement.** Indeed, the Receiver's proposed order states the following:

> All other provisions of the Corrected Receivership Order shall apply to the Affiliate Receivership Entities to the same extent as Receivership Entities as necessary and appropriate to allow the Receiver to accomplish the duties required of him in the Corrected Receivership Order.[13]

---

[10] ECF 467 at pg. 149.

[11] EFC 444 at pg. 7, ¶ 15.

[12] Id. at ¶ 83.

[13] See Proposed Order at ¶ 12.

Additionally, Solco I and XSun's attorneys will be immediately terminated, leaving both entity without legal counsel to contest the Receivership's authority to include them in the Receivership Estate, including, but not limited to asserting a claim of laches against the Government's effort through the receiver to include them now, rather than affording them a trial on the merits of their defenses.[14],[15],[16]

In sum, without due process, a claim should not proceed against them.  In *United States v. 51 Pieces of Real Property Rosell*, N.M., 17 F.3d 1306 (10ᵗʰ Cir. 1994), relied upon by Plaintiff, an action was initiated, the complaining party was named as a defendant, and plaintiff attempted to have that party served a complaint before it pursued default and seizure of an asset.  *Id*. Although proceeding under a federal forfeiture statute which was specifically void of any due process requirements, the Court recognized that "due process requires that a person be given notice and an opportunity for a hearing before being deprived of a property interest."[17]  No such hearing has ever taken place in this case.  The assets of these parties (and others similarly situated) have already been frozen by this Court's order and then confiscated by the Receiver without any proof justifying these draconian steps to occur.  There was no due process provided these parties.  Now, the Receiver is asking the Court to take a further leap and find their assets to be the same as the

---

[14] *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1208 (10th Cir. 2001) "[I]n order to prove the affirmative defense of laches, the defendant must demonstrate that there has been an unreasonable delay in asserting the claim and that the defendant was materially prejudiced by the delay." Id. (emphasis added).

[15] Further, assuming there is a reason to allow even temporarily some freeze, it should not in any event affect a legal retainer required to pay legal counsel to defend these entities and the Defendants for which they intended to provide assistance.  If Defendants succeed on appeal, both Solco I and XSun Energy can never face a claim against them. Therefore, they are the direct beneficiaries of the prophylactic effect of Defendants' successful appeal.

[16] See *infra* at II and III.

[17] *Id*.  (citing *Fuentes v. Shevin*, 407 U.S. 67, 81-82, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (1972)).

party Defendants – essentially making them liable for another entity's actions.  The Receiver's request goes too far.

## II. Solco

Solco is a Utah limited liability company.  It was organized on December 13, 2010.  Its status became delinquent in January of this year because its assets are frozen.  Solco did business selling lenses prior to 2016.  All of its sales occurred prior to the trial of this case, and a majority of them occurred prior to the filing of the Complaint in this case.  Solco's activities were known to Plaintiff.  Indeed, the Plaintiff relied upon opinion letters prepared for Solco by attorneys in its presentation of their case.  More than half a day was spent examining the attorney who drafted those letters.  The Court received that evidence and relied upon the testimony of that witness to make its Findings of Fact and Conclusions of Law.  Plaintiff never named Solco as a party to this action.  Judgment was not entered against Solco.  Solco has never been served as a party and has never been allowed any opportunity to defend itself in this case.  The Court has not established jurisdiction over Solco.  Nonetheless, the Court has extended jurisdiction, without even the allegation of a claim of alter ego to freeze the assets of this company.  Now, the Receiver seeks this Court's approval to leap frog the constitutional rights of this entity, ignore due process, and to include it as though it were a Defendant all along in this case.  The recommendation is overreaching, unconstitutional, and beyond the duties and obligations of this Receiver.  In doing so, the Receiver sheds his responsibility to collect on the judgment entered against the named Defendants, and advocates for the Plaintiff against an entity it deliberately chose not to name as a party.  The recommendation should not be followed as to Solco.

## III. XSun

XSun is a Utah limited liability company.  It was formed in April, 2011.  Its sole member is Solstice Enterprises, a foreign entity.  This is not an averment, but the reality known to the Receiver.  See attached Operating Agreement for XSun Energy, LLC, provided as Exhibit UU to the Receiver by David Nelson.  Like Solco, XSun sold lenses.  The sales of those lenses occurred mainly in 2011 and 2012.

In 2011, like RaPower-3, XSun Energy had its own Zions Bank accounts (Accounts ending in 3293 and 6920).[18]  By July, 2012, those accounts had more than $650,000 in them.  Limited amounts of those funds were used to pay employees.  $2,125,910 was *not* reported as income for Neldon and Glenda Johnson on his taxes.  Indeed, their 2012 tax return reported income of $18,879.[19]

Like Solco, XSun's activities were known to Plaintiff.  Indeed, the Plaintiff relied upon opinion letters prepared for XSun by attorneys in its presentation of their case.  More than half a day was spent examining the attorney who drafted those letters.  The Court received that evidence and relied upon the testimony of that witness to make its Findings of Fact and Conclusions of Law.  Plaintiff deliberately chose to not name XSun as a party.  Judgment was not entered against XSun.  XSun has never been served as a party and has never been allowed any opportunity to defend itself in this case.  The Court has not established jurisdiction over XSun.  Nonetheless, the Court has extended jurisdiction, without even the allegation of a claim of alter ego to freeze the assets of this company.  Now, the Receiver seeks this Court's approval to leap frog the constitutional rights of this entity, ignore due process, and to include it as though it were a Defendant all along in this case.   The recommendation is overreaching, unconstitutional, and beyond the duties and

---

[18] Despite having received bank statements for this account, for some unknown reason, the Receiver has failed to identify this to the Court.

[19] Their 2012 Tax Return is in the Receiver's possession.

obligations of this Receiver.  In doing so, the Receiver sheds his responsibility to collect on the judgment entered against the named Defendants, and advocates for the Plaintiff against an entity it deliberately chose not to name as a party.  The recommendation should not be followed as to XSun.

### IV.    Other Entities.

Like Solco and XSun, none of the other entities identified by the Receiver have ever been hailed into court.  No allegation has ever been made against them.  None have ever had the opportunity to defend themselves.

### IV.    Johnson Trust

The N.P. Johnson Family Limited Partnership was created as an estate planning vehicle. Transfers were made with consideration that is recited in the documents the Receiver has in his possession.  He dismisses the significance of this by saying what has been provided is "self serving" while assuming that if he could get other documents he suspects that he might be able to find something to contradict the parties estate planning intent and structure.  That is not, or should not, be found to be a sufficient basis to justify the dramatic conclusion he suspects more information might help him reach.

**Response to Rationales for Recommendation**

### 1.    Close associations with the original Receivership Entities.

The receiver correctly points out Neldon Johnson signed on behalf of both parties in a number of agreements.  He signed the royalty agreement between Solco and IAS on behalf of both companies. (ECF 581, pp. 5-6, 37-38)  He signed on behalf of Solco. (*Id*. p. 6, 38)  He signed royalty agreements on behalf of Starlight and RaPower. (*Id*., p. 26)  He signed a royalty agreement between IAS and XSun on behalf of both parties. (*Id*., p. 39)  He signed on behalf of the family

limited partnership. (*Id*. p. 44)  There is a reason why Neldon Johnson was the one to sign on behalf of various entities.

Judge Dee Benson entered an Order that required International Automated Systems to be operated by Neldon Johnson along with two independent directors serving as the Board of Directors.  (See Exhibit 1, Final Judgment as to International Automated Systems, Inc., in Case No. 2:89 CV 0687B.)  The Final Judgment reads, in relevant part:

> IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant shall appoint a board of directors whose majority consists of independent directors. For purposes of this Consent and Judgment, a person shall be considered an independent director if the person: (i) has no family or material relationship with Neldon P. Johnson, is a current officer, director or employee of International Automated Systems, Inc. or has been an officer, director or employee of International Automated Systems at any point during the preceding ten (10) years; (ii) is not an affiliate of International Automated Systems, Inc., or any of International Automated Systems, Inc.'s subsidiaries; (iii) accepts no consulting, advisory or other compensation fee from International Automated Systems, Inc. except director's fees, and (iv) does not own or control 5% or more of the voting securities of International Automated Systems, Inc.

(See Exhibit 1, p. 3, Part III.)

That Order remains in effect.  Although this Court can remove Neldon Johnson, it cannot remove the other two independent directors without violating the prior Order of Judge Benson.

International Automated Systems had a bookkeeper-employee, Lisa Phillips, who embezzled over $200,000.00 from the company before it was discovered.  Because of her embezzlement, the Board unanimously adopted a policy that required Neldon Johnson to sign on behalf of entities whenever the interests of IAS were affected directly or indirectly.  In conformity with that policy, Neldon Johnson signed on behalf of entities when the agreements had any effect, directly or indirectly, on IAS.  The purpose was to assure that resources would be used for their intended purpose and not diverted to unauthorized ends.

**2.      Assets have been transferred to or are being held by the affiliates.**

The receiver recommends taking all the technology belonging to non-parties.  On page 46 the receiver states:

> Black Night owns and controls the technology that Johnson insists is essential to the operations of IAS and RaPower. While the Receiver will not be resuming development or promotion of the alternative energy scheme that RaPower promoted, so long as the technology remains with Black Night and Starlight, Johnson or others could continue their scheme under different companies—all the while claiming that they have and are using the technology underlying the energy systems of IAS and RaPower. If that technology is not brought back into the Receivership Estate, it may be used to continue the deception.  (ECF 581)

This position has already been rejected by the Court.  When an injunction was first requested, the Court rejected the "overbroad" language of the draft findings that would enjoin all business activities.  The Court correctly viewed the government's right to restrain to be limited to giving tax advice, not to selling products:

> THE COURT: Okay. My questions are about Paragraph 1. First of all, you are asking me to bar these defendants and related entities from sale of any interest in any solar lens or solar energy system. It seems to me that the evil that you're complaining of is promoting tax benefits falsely for this solar energy program, not necessarily that the sale of lens is per se wrong. So isn't this request for relief overbroad?  (TR. 2510, l. 25-2512, l. 4)

The government's language that was in the draft they submitted to the Court, and which the Court believed to be overbroad, is the following:

1. Organizing (or assisting in the organization of), promoting, or selling any entity, plan, or arrangement or participating (directly or indirectly) in the sale of any interest in an entity, plan, or arrangement involving a solar lens and/or any solar energy system or component; (ECF 334, p. 112)

This language was changed when the Court later entered its findings to eliminate the overbroad restriction on the continuation of selling any and all products.  The final version signed by the Court states the following:

> Solar Energy Business Limited without Disclosures. Organizing (or assisting in the organization of), promoting, or selling any entity, plan, or arrangement or participating (directly or indirectly) in the sale of any interest in an entity, plan, or

11

> arrangement involving a solar lens and/or any solar energy system or component without the following affirmative disclosure printed on every document; included on every webpage and sub-page that comprises rapower3.com, iaus.com, rapower3.net, the IAUS & RaPower3 Forum, and any other website controlled by any Defendant and used in relation to marketing lenses; and included in any other written communication: "THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH in U.S. v. RaPower-3, LLC., et al., Case No., 2:15 cv 828, has determined that the solar energy technology of RaPower-3 in place from 2005 to 2018 is without scientific validation or substance and ineligible for tax credits or depreciation by individual purchasers of lenses."; (ECF 467, pp. 130-131)

The change to the language of this paragraph was to make it clear that Defendants were permitted to continue to do business, and the technology developed by the Defendants could continue to be sold. But any representation of tax benefits or qualifications was to end. ONLY the content of sales and advertising was involved, not the complete appropriation of technology and discontinuation of business, as the receiver now asks to accomplish.

**Glenda Johnson**

Glenda Johnson is not an officer, director or controlling officer of any entity. She has assets she acquired through inheritance, and has provided services for which she was not compensated. She separately owned shares of IAUS which she sold. Her individual assets should not be swept into the receivership, and she is entitled to all the protection of due process and the opportunity to defend against this unwarranted confiscation of her individual property. The receiver is turning the process into a sham by presuming he has a right to confiscate and manage property belonging to a third-party over whom the Court has not acquired jurisdiction.

Solstice is owed a royalty of 80% under a royalty agreement. Solstice is a foreign entity over which the Court has not acquired jurisdiction and which has the right to due process before having any of its property confiscated or controlled by the receiver (or this Court).

**Production**

The Receiver has failed to disclose that extensive materials have been produced. Everything that could be located within the scope of what has been requested has been produced. The DOJ, however, is believed to have a large volume of materials in their possession that is not in Defendants, nor Solco's, nor XSun's, nor Glenda Johnson's possession.  Material obtained through a search warrant as far back as 2012 has been continually in DOJ's possession.  When the material was returned some of the computer hard drives no longer worked and whatever had been on them was lost to Defendants.  Physical files were disorganized and Defendants could not be certain things were fully returned.  The time it would take to reorganize was too much, and many of the files were useless in their disorganized state.  DOJ subpoenaed third-parties, including banks and obtained materials that they retain.  Whether these were ever produced to Defendants is not known, but the fact that DOJ has copies is certain.

Defendants used Snow, Christensen & Martineau as counsel, replacing them with Justin Heideman.  When the change of counsel took place, it is not known whether all the files were turned over to Mr. Heideman.  Later Mr. Heideman was replaced by Nelson, Snuffer, Dahle & Poulsen, and that firm does not believe they received all the files previously in the possession of Mr. Heideman.  The attorneys that represented Defendants during the trial of the case did not participate in the early process, including discovery.  Therefore, the amount of information available to the trial attorneys was less, likely much less, than what was available to the DOJ.

The Receiver has informed Mr. Snuffer in a phone call that the DOJ has not turned over to him all their files.  There are likely significant materials that are relevant to the Receiver's information quest that exists only in the files of the DOJ at this point.  The Receiver should seek production from the DOJ, rather than accuse the Defendants and others of failing to produce.

Glenda Johnson produced a large thumb drive of material, which the Receiver has failed to mention in his filings.  That thumb drive contained gigabytes of material, and was not limited to "self-serving" disclosures.

DATED this 15th day of March, 2019.

NELSON SNUFFER DAHLE & POULSEN

 /s/  Denver C. Snuffer, Jr.____
Denver C. Snuffer, Jr.
Steven R. Paul
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **RESPONSE TO RECEIVER'S REPORT AND RECOMMENDATION AND MOTION TO INCLUDE AFFILIATES AND SUBSIDIARIES IN THE RECEIVERSHIP ESTATE** was sent to counsel for the United States in the manner described below.

Erin Healy Gallagher
Erin R. Hines
US Dept. of Justice
P.O. Box 7238
Ben Franklin Station
Washington, DC   20044
*Attorneys for USA*

Sent via:
_____ Mail
_____ Hand Delivery
_____ Email: erin.healygallagher@usdoj.gov
            erin.r.hines@usdoj.gov
__X__ Electronic Service via Utah Court's e-filing program

Wayne Klein, Receiver
P.O. Box 1836
Salt Lake City, Utah   84110

Sent via:
_____ Mail
_____ Hand Delivery
_____ Email: wklein@kleinutah.com
__X__ Electronic Service via Utah Court's e-filing program
Joseph M.R. Covey
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700

Jonathan O. Hafen

14

Salt Lake City, Utah   84111
*Attorneys for Receiver*

Sent via:
_____ Mail
_____ Hand Delivery
_____ Email: jhafen@parrbrown.com
              jcovey@parrbrown.com
__ **X** __ Electronic Service via Utah Court's e-filing program


 /s/ Steven R. Paul _____
*Attorneys for Defendants*

15