IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAPOWER-3, LLC; INTERNATIONAL AUTOMATED SYSTEMS, INC.; LTB1, LLC; R. GREGORY SHEPARD; NELDON JOHNSON; and ROGER FREEBORN,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER INVALIDATING LIENS AND DIRECTING THE RECEIVER TO CONDUCT ADDITIONAL INVESTIGATION**<br><br>Civil No. 2:15-cv-00828-DN-DAO<br><br>District Judge David Nuffer<br>Magistrate Judge Daphne A. Oberg |

I.      **OVERVIEW**

Following a bench trial,[1] the Court entered Findings of Fact and Conclusions of Law[2] and other orders.[3] Wayne Klein was appointed as Receiver ("Receiver")[4] and directed to determine the location of and recover all receivership property.[5]

After the Receiver discovered that Glenda Johnson had filed a lawsuit against a buyer of Receivership Property and had granted and facilitated the filing of liens against real property of the Receivership, the Receiver filed *Receiver's Ex-Parte Affidavit of Non-Compliance Against*

---

[1] *See* Minute Entries for Trial, *United States v. RaPower-3, et al.*, 2:15-cv-00828-DN-EJF, Docket Nos. 372, 374, 378, 380, 386, 391-93, 409, 415.

[2] Docket No. 467, filed October 4, 2018.

[3] These included Initial Order and Injunction after Trial (Docket No. 413, filed June 22, 2018), Preservation Order (Docket No. 419, filed June 27, 2018), Asset Freeze (Docket No. 444, filed August 22, 2018), and Amended and Restated Judgment (Docket No. 507, filed November 13, 2018).

[4] Corrected Receivership Order ("CRO"), Docket No. 491, filed November 1, 2018 at ¶ 3.

[5] *Id*. at ¶ 13.

*Glenda E. Johnson*.[6] No response or opposition was filed to the Affidavit of Non-Compliance and none was allowed under paragraph 43 of the Corrected Receivership Order.[7]

On May 5, 2020, the Court issued an order requiring Glenda Johnson to dismiss the lawsuit against the property buyer, requiring her to release the liens she had granted, and prohibiting her from granting other liens or initiating other litigation without prior approval of the Court or the Receiver ("Lien Release Order").[8] Glenda Johnson promptly complied with the order to dismiss the lawsuit she had filed[9] but took no action to release the liens.

On May 13, 2020, the Receiver filed a Notice of Non-Compliance, advising the Court that the liens had not been released.[10] The next day, Glenda Johnson filed a declaration stating that she had complied with the Court's order to the best of her ability but asserting that she lacked "authority to release the liens."[11] Glenda Johnson claimed that she could not release the liens because the liens were held by Anstram Energy and because Preston Olsen, the manager of Anstram, refused to release the liens. She also claimed that Olsen had transferred control of Anstram to Roger Hamblin.[12] The Receiver responded, averring that Glenda Johnson had neither

---

[6] Docket No. 888, filed March 30, 2020.

[7] *See* Request to Submit, Docket No. 919, filed April 29, 2020 at ¶ 5.

[8] Docket No. 920, filed May 5, 2020.

[9] *Johnson v. Wings West, LC*, Case No. 2007000008 (Motion to Dismiss with Prejudice), Fourth District Court for Millard County, Utah, May 5, 2020 (also available at Docket No. 923-1). The case remains pending to adjudicate counterclaims.

[10] Docket No. 923, filed May 13, 2020.

[11] Docket No. 925, filed May 14, 2020 at ¶ 7.

[12] Docket No. 925, filed May 14, 2020 at ¶ 2.

complied with the Lien Release Order nor demonstrated an impossibility to comply with the Lien Release Order.[13]

On June 4, 2020, the Court issued another order requiring Glenda Johnson to provide specific information under oath in support of her claim that it was impossible for her to comply with the Lien Release Order ("Impossibility Order").[14] Glenda Johnson was required to provide this additional information via declaration by June 10, 2020.[15] On June 10, 2020, Glenda Johnson filed a second declaration providing information about creation of the liens, delivering recently-signed declarations by Hamblin and Olsen, and supplying a copy of the agreement transferring Anstram to Hamblin.[16]

On June 30, 2020, the Receiver filed *Receiver's Report and Recommendation on Glenda Johnson's Non-Compliance with Order Requiring Release of Liens* ("Report and Recommendation").[17] The Report and Recommendation summarized the factual issues related to the Lien Release Order and recommended additional measures be taken to ensure Receivership Property is protected.

After reviewing the declarations and materials submitted by the Receiver and Glenda Johnson, the Court adopts some of the recommendations of the Receiver and issues this order.[18] At the direction of the Court, the Receiver prepared draft findings of fact and conclusions of law

---

[13] Docket No. 929, filed May 20, 2020.

[14] Docket No. 933, filed June 4, 2020.

[15] *Id.*

[16] Docket No. 937, filed June 10, 2020.

[17] Docket No. 942, filed June 30, 2020. The Report and Recommendation was submitted pursuant to the Receiver's duty to "promptly notify the Court and counsel for the United States of any failure or apparent failure of any person or entity to comply in any way with the terms of this [CRO] order." CRO at ¶ 42.

[18] *See* Docket Text Order No. 967, filed July 14, 2020.

and a proposed order. The Receiver provided the draft findings of fact and conclusions of law and a proposed order to counsel for Glenda Johnson for review and comment. After the deadline for review and comment passed, the Receiver submitted a final draft to the Court. After careful consideration of all evidence, submissions, and materials, these final findings of fact, conclusions of law and order are entered.

**TABLE OF CONTENTS**

I.        OVERVIEW ................................................................................................1

II.       FINDINGS OF FACT..................................................................................6

          A.      Control of Receivership Properties was Vested in the Receiver ...........................6

          B.      Glenda Johnson Created a Lien on IAS Property ...................................................7

          C.      Glenda Johnson Created Additional Liens, Granted Liens to Anstram
                  Energy .......................................................................................................9

          D.      Sale of Anstram Energy to Roger Hamblin ..........................................................15

          E.      Order to Dismiss Wings West Lawsuit and Release Liens; Lawsuit Filed
                  by Hamblin....................................................................................................16

          F.      Appeal Rulings.........................................................................................18

III.      CONCLUSIONS OF LAW .......................................................................18

IV.       ORDER.......................................................................................................25

## II.     FINDINGS OF FACT

### A.     Control of Receivership Properties was Vested in the Receiver

1.      On October 31, 2018, the Court took excusive possession "of all assets, of whatever kind and wherever situated, of Defendant[ ] . . . International Automated Systems Inc. ("IAS") . . . ." and appointed Wayne Klein Receiver over the Receivership Estate.[19]

2.      The CRO authorized the Receiver "to take immediate possession of all real property of the Receivership Defendants . . . ."[20]

3.      The CRO prohibits all those with notice of the CRO from "taking any action . . . which would interfere with or prevent the Receiver from performing his duties," including interfering "with the Receiver's efforts to take control, possession, or management of any Receivership Property."[21] The CRO specifically prohibits "creating or enforcing a lien upon any Receivership Property."[22]

4.      Real property in Millard County, Utah owned by IAS with assessor parcel number HD-4658-1 was specifically identified as property that was under the immediate and exclusive control of the Receiver.[23]

5.      Glenda Johnson signed an acknowledgement of receipt of the receivership order on November 29, 2018.[24]

---

[19] Lien Release Order, Docket No. 920 at ¶ 1, citing the CRO at ¶¶ 2, 3.

[20] *Id*. at ¶ 2 citing the CRO at ¶ 20.

[21] CRO at ¶ 35.

[22] CRO at ¶ 35(a).

[23] Lien Release Order, Docket No. 920 at ¶ 3, citing the CRO at ¶ 20(w).

[24] Lien Release Order, Docket No. 920 at ¶ 25.

6.    Glenda Johnson was found in civil contempt of the CRO two separate times, first in June 2019 and again in July 2020.[25] Her contemptuous behavior included actively discarding and intentionally withholding responsive documents, failing to identify and recover documents held by third parties, failing to turn over assets, and interfering with Receivership Property.[26] Glenda Johnson's actions throughout the course of the Receivership have been "extremely disturbing."[27]

7.    On August 30, 2019, the Receiver filed "*Receiver's Motion for Order Directing Turnover and Transfer of Real Properties Titled in the Name of Glenda Johnson and Funds in Accounts Controlled by Glenda Johnson*," seeking the turnover of 14 properties titled in the name of Glenda Johnson. This motion dealt with 11 properties in Millard County, Utah, two properties in Utah County, Utah, and one property in Los Angeles County, California.[28]

8.    The Receiver's sale of parcel HD-4658-1 to Wings West, L.C. on August 5, 2019 was approved by the Court, free and clear of interests.[29]

**B.    Glenda Johnson Created a Lien on IAS Property**

9.    On August 15, 2019, ten days after the sale of IAS-owned parcel HD-4658-1 to Wings West, Glenda Johnson filed a $9 million lien against the property.[30] The lien claimed that

---

[25] Docket No. 701, filed June 25, 2019; Docket No. 947, filed July 6, 2020..

[26] *Id*.

[27] Docket No. 947 at ¶ 11.

[28] Docket No. 757, filed August 30, 2019.

[29] Lien Release Order, Docket No. 920 at ¶ 4, citing Docket No's 689 (filed June 6, 2019) and 743 (filed August 5, 2019).

[30] Lien Release Order, Docket No. 920 at ¶ 5; Millard County Recorder, Recordation # 00207237, recorded August 15, 2019 (book 651, page 444) ("Millard Lien").

Glenda Johnson was owed the $9 million for "labor and/or materials" that she "provided to or at the request of INTERNATIONAL AUTOMATED SYSTEMS, INC."[31]

10.     Glenda Johnson claimed to have provided this labor and materials on parcel HD-4658-1 between January 2004 and August 14, 2019.[32]

11.     On February 10, 2020, Glenda Johnson filed a *pro se* lawsuit against Wings West, the buyer of parcel HD-4658-1.[33] The lawsuit sought $9 million from Wings West.[34] The lawsuit claimed Glenda Johnson provided labor and materials beginning in January 2004 up through August 14, 2019.[35]

12.     The August 22, 2018 Asset Freeze Order[36] prohibited any encumbrance of Receivership Property.[37]

13.     Labor and materials provided by Glenda Johnson after August 22, 2018, to the extent any were provided, were provided after the entry of the Asset Freeze.[38]

---

[31] Millard Lien at 1.

[32] *Id*.

[33] *Johnson v. Wings West, LC*, Case No. 200700008 (Complaint), Fourth District Court, Millard County, February 10, 2020 (also available at Docket No. 888-2).

[34] *Id*. ¶ 3.

[35] *Id*. ¶ 4.

[36] Docket No. 444, filed August 22, 2018.

[37] *Id*. at ¶ 4.

[38] Glenda Johnson's complaint included a copy of the August 15, 2019 lien, with a subsequently-added notation on the lien regarding the Receiver "jumping the gun" in selling the property before the appeal ruling was issued. On May 5, 2020, pursuant to the Lien Release Order, Glenda Johnson dismissed the lawsuit she filed against Wings West.

14.     The Asset Freeze Order prohibition against creating any encumbrance includes the providing of any supposed "labor and/or materials" that might be used to create a lien on IAS property.[39]

15.     The CRO gave the Receiver immediate and exclusive control over IAS property.[40]

### C.     Glenda Johnson Created Additional Liens, Granted Liens to Anstram Energy

16.     In November 2019, Glenda Johnson contacted Preston Olsen[41] expressing an interest in selling rights she held in "businesses, contracts and assets associated in any way with the Johnson Fresnel solar lenses."[42]

17.     Sometime between November 1, 2019 and November 25, 2019, Glenda Johnson met with Olsen. Together they discussed Olsen buying Glenda Johnson's interests associated with the solar lenses.[43]

18.     Olsen determined that forming a company in Nevis would be the "safest place to hold any right, title, or interest [Olsen] would purchase from [Glenda Johnson]."[44]

19.     On November 25, 2019, Olsen formed Anstram Energy LLC in the country of Nevis. Anstram was formed to hold the interests and assets that Olsen was buying from Glenda

---

[39] *Id.*

[40] CRO at ¶ 20.

[41] Olsen, a Salt Lake City attorney, had been a trial witness and is challenging, in U.S. Tax Court, the IRS's determination that he improperly claimed deductions and tax credits for purchasing solar lenses from RaPower.

[42] Declaration of Preston Olsen, Docket No. 937-3, filed June 10, 2020 at ¶ 2. *See* Declaration of Glenda Johnson, Docket No. 937, filed June 10, 2020 at ¶ 3(a).

[43] Declaration of Preston Olsen, Docket No. 937-3 at ¶ 3; Declaration of Glenda Johnson, Docket No. 937 at ¶ 2(b).

[44] Declaration of Glenda Johnson, Docket No. 937 at ¶ 3 (c).

Johnson.[45] Anstram's articles of organization recite that one of its corporate purposes is to "engage in buying and selling of real estate."[46]

20.      Neither Anstram's corporate documents nor Nevis public records identify the owners or managers of Nevis, except to identify a Nevis trust company as registered agent.[47] Glenda Johnson subsequently identified Olsen as the principal behind Anstram.[48] Olsen himself admitted he was the "sole member of Anstram Energy."[49]

21.      Sometime between Anstram's formation, on November 25, 2019, and December 18, 2019, Glenda Johnson entered into a verbal agreement with Anstram, granting Anstram a $30 million lien on real properties titled in her name.[50] The lien was in exchange for "energy products" Glenda Johnson would receive from Anstram in the future.[51] Although she testified in her deposition that she did not recall when she entered into the verbal agreement with Anstram

---

[45] Declaration of Preston Olsen, Docket No. 937-3 at ¶ 4; Declaration of Glenda Johnson, Docket No. 937 at ¶ 3 (c), (d).

[46] Certificate of Formation for Anstram Energy by the Island of Nevis Registrar of Companies (Nov. 25, 2019); Articles of Organisation of Anstram Energy LLC, filed with Island of Nevis Office of Registrar or Companies (Nov. 25, 2019) (also found at Docket No. 942-1, filed June 30, 2020).

[47] Id.

[48] Glenda Johnson Deposition, January 23, 2020 at 161:1 – 163:21 ("Glenda Johnson Deposition). Glenda Johnson testified she did not know when Anstram Energy was formed or who its owners were. Id. at 156:25 – 157:8. She declared she is not an owner or manager of Anstram Energy. Docket No. 925, filed May 14, 2020 at 2.

[49] Declaration of Preston Olsen, Docket No. 937-3, filed June 10, 2020; Olsen v. Commissioner of Internal Revenue, Docket No's 26469-14 & 21247-16, Tr. 307:4 – 307:7; 308:11 – 308:14, Jan. 22, 2020 (U.S. Tax Court) ("Olsen Transcript"). Excerpts from the transcript of Olsen's Tax Court testimony are found at Docket No. 942-1, filed June 30, 2020.

[50] Glenda Johnson Deposition at 157:13 – 158:21. Olsen testified that the properties were valued at "around $50 million." Olsen Transcript, 308:19 – 308:20. Because the agreement is oral, it is difficult to know which valuation formed the financial basis for their agreement.

[51] Glenda Johnson Deposition at 158:22 – 159:7; Olsen Transcript, 308:21 – 308:25.

Energy,[52] her June 10, 2020 declaration states the agreement was on or about November 25, 2019—the day Anstram Energy was formed.[53]

22.     Glenda Johnson knew, or at least in her deposition claimed to know, little to nothing about Anstram Energy when she entered into the verbal agreement granting millions of dollars in liens to Anstram. None of the "energy products" she was to receive under the agreement had been provided by the newly-formed Anstram at the time the liens were filed.[54]

23.     Olsen testified that the purpose of the agreement was to allow Anstram "to continue to develop this [solar] technology."[55] Anstram was to develop the technology and give back to Glenda Johnson the projects and the properties.[56] Olsen valued the interests Anstram purchased from Glenda Johnson at $50 million.[57] The consideration provided by Anstram consisted of a promise to develop solar projects and returning the projects and properties to Glenda Johnson at an unspecified later date.[58]

24.     As part of the verbal agreement to sell assets, Glenda Johnson agreed to place mechanics' liens on properties titled in her name.[59] Every property on which Glenda Johnson and Olsen discussed placing liens was identified in the CRO as a property on which liens were prohibited.

---

[52] Glenda Johnson Deposition at 157:25 – 158:17.

[53] Declaration of Glenda Johnson, Docket No. 937.

[54] Impossibility Order, Docket No. 933 at 4, quoting January 23, 2020 Transcript at 155:21 – 165:1.

[55] Olsen Transcript, 308:10 – 308:12.

[56] Id. at 308:16 – 308:18.

[57] Olsen Transcript at 308:11 – 308:20.

[58] Id.

[59] Declaration of Preston Olsen, Docket No. 937-3 at ¶ 4; Declaration of Glenda Johnson, Docket No. 937 at ¶ 3 (f).

25.     Glenda provided Olsen with information necessary for preparation of the liens, including providing a lien form and property descriptions.[60]

26.     On December 18, 2019, Glenda Johnson and Olsen met at the law offices of Nelson Snuffer Dahle & Poulsen "to have the paperwork notarized and Preston Olsen signed the forms of mechanics' liens" on properties titled in Glenda Johnson's name and the Texas Property.[61]

27.     Glenda Johnson agreed to record the liens on behalf of Anstram.[62]

28.     On December 19, 2019, Glenda Johnson recorded a notice of lien with the Millard County Recorder on 15 additional real properties located in Millard County, Utah.[63] These liens were filed on behalf of Anstram Energy, but the lien notice, when recorded, was to be mailed to Glenda Johnson.[64] The notice of lien includes the signature of Preston Olsen as the person authorized to act on behalf of Anstram Energy.[65]

29.     The Notice of Lien recited as a justification: "The receiver Wayne Klein threatens to sell these parcels. The receiver Wayne Klein was appointed by a court order and that order is on appeal. The order is likely to be reversed and the receiver's authority removed. The receiver is

---

[60] Declaration of Glenda Johnson, Docket No. 937 at ¶ 3(e).

[61] Declaration of Preston Olsen, Docket No. 937-3 at ¶¶ 5-6; Declaration of Glenda Johnson, Docket No. 937 at ¶ 3 (f).

[62] Declaration of Preston Olsen, Docket No. 937-3 at ¶ 7; Declaration of Glenda Johnson, Docket No. 937 at ¶3 (f).

[63] Millard County Recorder, Recordation #00208383, recorded December 19, 2019 (book 667, p. 596) ("Millard Lien") (also found at Receiver Exhibit 2160 and Docket No. 888-1).

[64] Olsen testified that the lien was filed on behalf of Anstram Energy. Olsen Transcript 308:21 – 308:25.

[65] *Id*. at 2.

jumping the gun in wanting these assets before the appeal has been decided by the court of appeals."[66]

30.     Glenda Johnson admitted that her purpose in filing these liens was to hinder the Receivership.[67]

31.     Also on December 19, 2019, Glenda Johnson recorded a $2 million notice of lien with the Utah County Recorder on a home in Payson, Utah titled in her name ("Payson Lien").[68] The Payson Lien also was filed on behalf of Anstram Energy. As with the Millard County lien, the Payson Lien was for Glenda Johnson's contract rights relating to this property and recited the appeal as a justification for the lien.[69] This lien notice, when recorded, also was to be mailed to Glenda Johnson.

32.     On January 14, 2020, Glenda Johnson recorded a notice of lien with the County Clerk of Howard County, Texas on 627 acres of property titled in the name of the N.P. Johnson Family Limited Partnership ("Texas Lien").[70] The Texas Lien was for $10 million and was in favor of Anstram Energy. The Texas Lien also related to Glenda Johnson's assignment of her contract rights to this property to Anstram Energy and recited the appeal as a justification for the lien.[71]

---

[66] Millard Lien at 1.

[67] Lien Release Order, Docket No. 920 at ¶ 11.

[68] Utah County Recorder, Recordation #134949:2019, recorded December 19, 2019 (also found at Docket No. 888-3).

[69] *Id*.

[70] County Clerk: Howard County, Texas Recordation #2020-00000557, recorded January 14, 2020 (also found at Docket No. 888-4).

[71] *Id*.

33.     Glenda Johnson never owned any rights to the property in Howard County, Texas ("Texas Property"). The Texas Property was titled in the name of the N.P. Johnson Family Limited Partnership ("NPJFLP"). Glenda Johnson was never an owner or agent of NPJFLP.[72] Glenda Johnson previously testified that the Texas Property was owned by the NPJFLP and that she had no ownership or management role over the NPJFLP.[73]

34.     The Court previously had expanded the Receivership Estate to include NPJFLP ("Affiliates Order").[74] The Affiliates Order granted the Receiver exclusive authority over the Texas Property as of May 3, 2019.

35.     The Texas Lien was recorded by Glenda Johnson after the Texas Property had become exclusive property of the Receivership Estate.

36.     The Court approved the sale of the Texas Property on March 2, 2020.[75] That sale was "free and clear of interests."[76] The sale closed in April 2020 despite the existence of the Texas Lien.[77]

---

[72] *See* Receiver's Report and Recommendation on Inclusion of Affiliates and Subsidiaries in Receivership Estate, Docket No. 581, filed February 25, 2019 at 17-21.

[73] Glenda Johnson Deposition, May 1, 2019 at 194:5 - 11; 218:8 – 219:8; Glenda Johnson Deposition, January 23, 2020 at 147:18 – 147:25.

[74] Docket No. 636, filed May 3, 2019.

[75] Docket No. 867, filed March 2, 2020.

[76] *Id*. at 2.

[77] *See* Receiver's Notice of Sale Results, Docket No. 915, filed April 21, 2020.

### D.      Sale of Anstram Energy to Roger Hamblin

37.      In late January 2020, Preston Olsen's U.S. Tax Court trial was held.[78] A ruling in that case has not yet issued. Shortly after Olsen's Tax Court trial, Roger Hamblin expressed to Glenda Johnson an interest in buying the liens she had granted to Anstram.[79]

38.      On February 25, 2020, the Court held a hearing on contempt, issuing initial findings of contempt from the bench. These included findings that Glenda Johnson participated in acts of contempt.[80]

39.      On February 29, 2020—four days after the contempt hearing—Glenda Johnson went to Olsen's home where Olsen prepared an agreement titled "Transfer of Membership Interests" ("Anstram Transfer Agreement").[81] The Anstram Transfer Agreement transferred all membership interests in Anstram Energy to a to-be-named transferee.[82] The stated price for the sale of Olsen's ownership of Anstram Energy was "ten dollars and other good and valuable consideration"[83]

40.      The same day, Roger Hamblin (a long-time associate of Neldon Johnson and the defendant in a suit filed by the Receiver) went to Glenda Johnson's home. He inserted his name

---

[78] *Olsen v. Commissioner of Internal Revenue*, Docket No's 26469-14, 21247-16 (U.S. Tax Court).

[79] Declaration of Roger Hamblin, Docket No. 937-2 at ¶ 4; declaration of Glenda Johnson, Docket No. 937 at ¶ 3(i).

[80] *See* Docket No. 863; *see also* Civil Contempt Order, Docket No. 947.

[81] Docket No. 937, filed June 10, 2020 at ¶ 3(k).

[82] Docket No. 937-1, filed June 10, 2020.

[83] *Id*.

in and signed the Anstram Transfer Agreement, becoming the owner of Anstram Energy and the

three property liens.[84] Hamblin paid $10.00 to purchase Anstram Energy.[85]

42.    Glenda Johnson facilitated the sale of Anstram to Hamblin, telling Olsen of

Hamblin's interest in Anstram, having Olsen prepare sales documents, and having Hamblin

come to her home to execute the purchase documents.[86]

42.    Hamblin had been personally served with the Asset Freeze Order on September 1,

2018 and with the Court's injunction on October 16, 2018. Hamblin acknowledged receipt of the

receivership order on December 4, 2018.

43.    Neither newly-formed Anstram Energy nor Hamblin have any apparent ability to

"continue to develop this [solar] technology."[87]

**E.    Order to Dismiss Wings West Lawsuit and Release Liens; Lawsuit Filed by Hamblin**

44.    On May 5, 2020, the Court ordered Glenda Johnson to dismiss the lawsuit she

filed against Wings West and release the liens she filed against Receivership Property. Glenda

Johnson received a copy of the Lien Release Order on May 5, 2020.[88]

45.    Glenda Johnson did not cause the liens to be released within three days as

required by the Lien Release Order.[89]

---

[84] Docket No. 937-2, filed June 10, 2020, ¶ 6.

[85] Docket No. 937-1, filed June 10, 2020.

[86] Declaration of Preston Olsen, Docket No. 937-3 at ¶¶ 10-13; Declaration of Glenda Johnson, Docket No. 937 at ¶¶ 3 (i)-(l); Declaration of Roger Hamblin, Docket No. 937-2 at ¶¶ 4-6.

[87] *See* Olsen Transcript, 308:11 – 308:12.

[88] Docket No. 937 at ¶ 2(a), filed June 10, 2020.

[89] Impossibility Order, Docket No 933 at ¶¶ 2, 3. Glenda Johnson did dismiss the lawsuit she filed against Wings West. The lawsuit remains pending to adjudicate counterclaims.

46.     Glenda Johnson's May 14, 2020 declaration, in which she claimed an inability to release the liens, was vague and incomplete, failing to provide information that would be necessary to establish impossibility.[90] The obfuscation in her May 14, 2020 declaration is similar to other situations where Glenda Johnson and other Johnson family members have attempted to deflect responsibilities to third parties, while improperly claiming to have complied with court orders.[91]

47.     Glenda Johnson received a copy of the Impossibility Order on June 4, 2020.[92]

48.     On June 8, 2020, after Glenda Johnson claimed to have attempted to obtain a release of the liens from Hamblin but before she filed her court-required supplemental declaration, Hamblin filed suit in Utah state court against Glenda Johnson seeking $30 million relating to the liens. Glenda Johnson filed an answer on June 22, 2020 admitting liability to Hamblin on his complaint.[93]

49.     Glenda Johnson, Olsen, and Hamblin stated that as of June 10, 2020, Hamblin was the only person with authority to release the liens.[94] Hamblin refused to release the liens.[95]

50.     Glenda Johnson admitted she "never had authority to grant or release the mechanics' liens."[96]

---

[90] Impossibility Order, Docket No 933 at 3.

[91] Impossibility Order, Docket No 933 at 3-4.

[92] Declaration of Glenda Johnson, Docket No. 937 at ¶ 2(b).

[93] Her answer stated simply: "I agree with the alligations [sic] I have no defense."

[94] Declaration of Roger Hamblin, Docket No. 937-2 at ¶¶ 7-10; Declaration of Glenda Johnson, Docket No. 937 at ¶¶ 3(l), (m).; Declaration of Preston Olsen, Docket No. 937-3 at ¶¶ 13, 14.

[95]  Declaration of Roger Hamblin, Docket No. 937-2 at ¶¶ 7-9.

[96] Declaration of Glenda Johnson, Docket No. 937 at ¶ 4.

**F.       Appeal Rulings**

51.     The Tenth Circuit Court of Appeals has issued rulings on both appeals filed by Receivership Defendants. The trial court judgment and appointment of the Receiver were affirmed[97] and the Receivership Defendants' challenge to the expansion of the Receivership Estate to include affiliated entities was dismissed.[98]

52.     The appeal rulings, affirming the Court's judgments, have not resulted in Glenda Johnson or any subsequent assignee of the liens conceding that any of the liens were invalid.

## III.      CONCLUSIONS OF LAW

53.     The 15 Millard County properties, the Payson Property, and the Texas Property all are identified as Receivership Property in the CRO.

54.     The liens granted by Glenda Johnson on the 15 Millard County Properties, the Payson Property, and the Texas Property are all invalid and are ineffective in granting any interest in any of these properties to Olsen, Hamblin, or Anstram Energy. The agreements creating the liens lacked valid consideration, were executed in violation of terms of the CRO, were created with fraudulent intent, and lack the requisite writings to validly convey interests in real property.

55.     To the extent that Glenda Johnson provided "labor and/or materials" on parcel HD-4658-1 after August 22, 2018, she did so in violation of the Asset Freeze Order and the CRO.[99]

---

[97] *United States v. RaPower-3, LLC, 960 F.3d 1240 (10th Cir. 2020)*.

[98] *United States v. Solco I, LLC, 962 F.3d 1244 (10th Cir. 2020)*.

[99] Docket No. 444, filed August 22, 2018; Docket No. 491, filed November 1, 2018.

56.     Glenda Johnson was the originator and driver of the plan to create and grant liens on properties titled in her name and in the name of NPJFLP.

57.     Glenda Johnson violated the CRO, after being aware of the CRO, by filing liens against the property sold to Wings West, L.C., the 15 Millard County properties, the Payson Property, and the Texas Property, and by filing a lawsuit against Wings West, LC, the buyer of Receivership Property. This conduct constitutes:

a.      "interfer[ing] with or prevent[ing] the Receiver from performing his duties;"[100]

b.      "creating or enforcing a lien upon any Receivership Property;"[101]

c.      "hinder[ing], obstruct[ing], or otherwise interfer[ing] with the Receiver in the performance of his duties;"[102]

d.      "Dissipat[ing] or otherwise diminish[ing] the value of any Receivership Property . . . [including] assigning or in any way conveying any Receivership Property . . . .;"[103] and

e.      "interfere[ing] with or harass[ing] the Receiver or interfere[ing] in any manner with the exclusive jurisdiction of this Court over the receivership estate."[104]

58.     Glenda Johnson violated the CRO, after being aware of the CRO, by falsely claiming, in the August 15, 2019 lien filed on the property sold to Wings West, that she had

---

[100] CRO at ¶ 35.

[101] *Id*. at ¶ 35(a).

[102] *Id*. at ¶ 35(b). Among the effects are increasing the costs of administering the Receivership Estate and delaying its administration.

[103] *Id*. at ¶ 35(c).

[104] *Id*. at ¶ 35(e).

provided "labor and/or materials" "in the amount of $9,000[,]000" and that labor and/or

materials were provided after entry of the CRO. This conduct constitutes:

a.      "interfer[ing] with or prevent[ing] the Receiver from performing his

duties;"[105]

b.      "hinder[ing], obstruct[ing], or otherwise interfer[ing] with the Receiver in

the performance of his duties"[106] (by causing other potential buyers of property to be

reluctant to purchase Receivership Property and increasing administrative expenses of the

Receivership Estate);

c.      "Dissipat[ing] or otherwise diminish[ing] the value of any Receivership

Property . . . [including] assigning or in any way conveying any Receivership Property . .

. .;[107] and

d.      "interfere[ing] with or harass[ing] the Receiver or interfere[ing] in any

manner with the exclusive jurisdiction of this Court over the receivership estate."[108]

59.      Roger Hamblin violated the CRO, after being aware of the CRO, by purchasing

Anstram Energy, which purported to own the liens against the 15 Millard County properties, the

Payson Property, and the Texas Property and refusing to release the liens after the Court ordered

the liens to be released. This conduct constitutes:

---

[105] *Id*. at ¶ 35.

[106] *Id*. at ¶ 35(b).

[107] *Id*. at ¶ 35(c).

[108] *Id*. at ¶ 35(e).

a.      "interfer[ing] with or prevent[ing] the Receiver from performing his duties;"[109]

b.      "hinder[ing], obstruct[ing], or otherwise interfer[ing] with the Receiver in the performance of his duties;"[110]

c.      "Dissipat[ing] or otherwise diminish[ing] the value of any Receivership Property . . . [including] assigning or in any way conveying any Receivership Property . . . .;"[111] and

d.      "interfere[ing] with or harass[ing] the Receiver or interfere[ing] in any manner with the exclusive jurisdiction of this Court over the receivership estate."[112]

60.      Roger Hamblin violated the CRO,[113] after being aware of the CRO, by filing a collusive lawsuit against Glenda Johnson in which he falsely claimed to have provided labor and materials in the amount of $30 million and claimed that some of this labor and materials were provided after the entry of the Asset Freeze. This conduct constitutes:

a.      "interfer[ing] with or prevent[ing] the Receiver from performing his duties;"[114]

b.      "creating or enforcing a lien upon any Receivership Property;"[115]

---

[109] *Id*. at ¶ 35.

[110] *Id*. at ¶ 35(b).

[111] *Id*. at ¶ 35(c).

[112] *Id*. at ¶ 35(e).

[113] To be clear, nothing in this order should be interpreted as finding Roger Hamblin in civil contempt of the CRO. Although Roger Hamblin's actions were in violation of the CRO, Hamblin must be given an opportunity to present defenses before a contempt finding is entered.

[114] CRO at ¶ 35.

[115] *Id*. at ¶ 35(a).

c.      "hinder[ing], obstruct[ing], or otherwise interfer[ing] with the Receiver in

the performance of his duties;"[116]

d.      "Dissipat[ing] or otherwise diminish[ing] the value of any Receivership

Property . . . [including] assigning or in any way conveying any Receivership Property . .

. .;[117] and

e.      "interfer[ing] with or harass[ing] the Receiver or interfere[ing] in any

manner with the exclusive jurisdiction of this Court over the receivership estate."[118]

61.     Hamblin's $10.00 purchase of Anstram Energy—and the resulting claim to $42

million in property liens—was not an arm's-length transaction.

62.     The lawsuit filed by Hamblin against Glenda Johnson—and Glenda Johnson's

statement of agreement with the allegations and lack of defenses—were coordinated actions

taken to hinder the Receivership  and are not effective in creating or granting any rights for

Hamblin in properties titled in the name of Glenda Johnson. Further, regardless of the outcome

of the state court litigation, the lawsuit by Hamblin has no legal effect in light of this Court's

ruling that the liens upon which the lawsuit is based are invalid.

63.     In light of the lawsuit that Hamblin filed against Glenda Johnson and his

willingness to provide a declaration to support Glenda Johnson's claim of impossibility, it is not

credible that Glenda Johnson sincerely attempted to obtain a release of the liens.

---

[116] *Id*. at ¶ 35(b).

[117] *Id*. at ¶ 35(c).

[118] *Id*. at ¶ 35(e).

64.     Glenda Johnson's claim that she was unable to obtain a response from Olsen when she requested a release of the liens is not credible in light of her subsequent ability to quickly obtain a declaration from Olsen to support her claim of impossibility (when she faced a risk of incarceration pursuant to the Court's June 4, 2020 order).

65.     None of Anstram Energy, Hamblin, or Olsen could develop the solar technology and give the projects and properties back to Glenda Johnson because all the properties have been subject to the Asset Freeze Order since August 22, 2018, all the patents and technology are the exclusive assets of the Receivership Estate, and any efforts to utilize the technology or towers or equipment are barred by the CRO.[119] Thus, Glenda Johnson could not convey the technology or the property and Anstram could not develop the technology without violating the CRO.

66.     Glenda Johnson's claims to have diligently attempted to secure a release of the three property liens are not credible because: a) she originated discussions with Preston Olsen to grant liens on the three groups of properties to Anstram Energy, b) she entered into a $30 million oral agreement with a newly-created Nevis company, assigning to it her interests in assets, c) she met with Olsen at the office of Nelson Snuffer to have the lien documents signed and notarized, d) she recorded the property liens on behalf of Anstram Energy and listed her address for delivery of the recorded liens, e) she suggested to Hamblin that Hamblin purchase Anstram Energy, f) she went to Preston Olsen to have Olsen prepare the Anstram Transfer Agreement, g) she had Hamblin come to her house to sign the Anstram Transfer agreement as the transferee, h) she secured a declaration from Hamblin affirming her statements that he refuses to release the liens, i) Hamblin paid only $10 for Anstram Energy and the lien interests, and j) she admitted all

---

[119] CRO at ¶¶ 2-5, 8, 20.

the allegations of Hamblin's lawsuit against her and said she had no defenses to Hamblin's claims to a $30 million lien on the properties.

67.     Glenda Johnson still has not provided all the information regarding the liens required by the Court's June 4, 2020 order. This includes:

a.     Describing the terms of the agreement pursuant to which the liens were granted;

b.     Glenda Johnson's other dealings with Preston Olsen and Roger Hamblin. For example, Glenda Johnson's June 10 declaration did not identify the lawsuit that Roger Hamblin had filed against her two days earlier; and

c.     Olsen and Hamblin's histories of relationships with any of the Receivership Defendants and Affiliated Entities. This would include information on any positions Hamblin held with Receivership Entities, entities he created or controlled relating to the solar energy scheme, IAS shares granted to him, his ownership role of other Nevis companies created by Neldon Johnson, his role as a distributor for Receivership Entities, and commissions he and his companies received for the sales of solar lenses. It would also include information on Olsen's ties to Receivership Defendants, his role as a trial witness in the government's enforcement action, and his disputes with the Internal Revenue Service regarding tax credits and deductions he has claimed relating to solar lenses.

IV.     ORDER

     **IT IS HEREBY ORDERED THAT**:

     1.    The liens that Glenda Johnson granted to Anstram Energy on properties in Utah County, Utah, Millard County, Utah, and Howard County Texas are invalid, void, and of no effect.

     2.    The Receiver will prepare and the Court will enter separate orders for the Receiver to record in Utah County and Millard County invalidating liens.  The Receiver shall file a copy of those orders with the county recorders of Utah County and Millard County, Utah, to be recorded on all properties on which Glenda Johnson granted liens.[120]

     3.    The Receiver is directed to conduct further investigation relating to the creation of Anstram Energy, circumstances relating to the granting of liens to Anstram, transfer of Anstram to Roger Hamblin, information identified in ¶ 67 of this order, conduct of Olsen and Hamblin, and any other apparent efforts to interfere with the Receiver's work in this case. This investigation shall include taking depositions of Roger Hamblin and Preston Olsen. The Receiver shall report to the Court the results of his additional investigation.

     Signed August 6, 2020.

               **BY THE COURT:**

               David Nuffer
               United States District Judge

---

[120] Because the Texas Property was sold free and clear of liens, no filing with Texas authorities is necessary.