**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAPOWER-3, LLC; INTERNATIONAL AUTOMATED SYSTEMS, INC.; LTB1, LLC; R. GREGORY SHEPARD; NELDON JOHNSON; and ROGER FREEBORN,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING TURNOVER MOTION; DENYING MOTION TO STRIKE; OVERRULING OBJECTION TO AUTHENTICATION OF EXHIBITS; AND OVERRULING OBJECTION TO REJECTION OF REPUTED CONTRACT**<br><br>Civil No. 2:15-cv-00828-DN<br><br>District Judge David Nuffer |

## I.   OVERVIEW

Following a bench trial,[1] Findings of Fact and Conclusions of Law[2] and other orders[3] were entered Wayne Klein was appointed as Receiver ("Receiver")[4] and directed to determine the location of and recover all receivership property.[5]

After the Receiver investigated transfers of real properties and cash to Glenda Johnson and conducted forensic accounting to determine the sources of funds Glenda Johnson used to acquire those assets, he filed Receiver's Motion for Order Directing Turnover and Transfer of Real Properties Titled in the Name of Glenda Johnson and Funds in Accounts Controlled by

---

[1] *See* Minute Entries for Trial, *United States v. RaPower-3, et al.*, 2:15-cv-00828-DN-EJF, Docket Nos. 372, 374, 378, 380, 386, 391-93, 409, 415.
[2] Docket No. 467, filed October 4, 2018.
[3] These included Initial Order and Injunction after Trial (Docket No. 413, filed June 22, 2018), Preservation Order (Docket No. 419, filed June 27, 2018), Memorandum Decision and Order Freezing Assets and to Appoint a Receiver (Docket No. 444, filed August 22, 2018), and Amended and Restated Judgment in a Civil Case (Docket No. 507, filed November 13, 2018).
[4] Corrected Receivership Order ("CRO") (Docket No. 491, filed November 1, 2018) at ¶ 3.
[5] *Id.* at ¶ 13.

Glenda Johnson ("Turnover Motion").[6] The Turnover Motion seeks an order requiring Glenda Johnson[7] to turn over to the Receiver 14 real properties titled in her name and $1.4 million in bank accounts she controls.[8]

Glenda Johnson opposed the Turnover Motion.[9] The Receiver filed his reply, identifying the sources of evidence upon which his motion relied.[10] Glenda Johnson moved to strike what she claimed was new evidence and argument in the Receiver's reply ("Motion to Strike").[11] The Receiver filed a memorandum in opposition to the motion to strike.[12] The Court issued an order inviting the Receiver to point the Court to material in the record authenticating certain documents identified by the Court,[13] to which the Receiver responded.[14] Glenda Johnson objected to the Receiver's submission authenticating exhibits ("Objection").[15]

After careful consideration of the evidence and submissions, the Court indicated that it would grant the Receiver's Turnover Motion, deny Glenda Johnson's Motion to Strike, and overrule Glenda Johnson's Objection.[16] As requested, the Receiver prepared draft findings of fact and conclusions of law and a proposed order. The Receiver provided the draft findings of

---

[6] Docket No. 757, filed August 30, 2019.
[7] Because Glenda Johnson is married to Neldon Johnson, one of the Receivership Defendants, this order will refer to her by her full name in lieu of the shorthand "Johnson" to avoid possible confusion.
[8] Docket No. 757, at 32. The Receiver is seeking possession of another four properties titled in the name of Glenda Johnson in a separate suit. *See* 2:19-cv-625 (D. Utah).
[9] Opposition to [Turnover Motion] ("Opposition"), Docket No. 784, filed October 11, 2019.
[10] Reply in Support of [Turnover Motion], Docket No. 802, filed November 22, 2019.
[11] Motion to Strike New Evidence and Argument in Reply Memorandum, Docket No. 805, filed November 26, 2019.
[12] Receiver's Memorandum in Opposition to Motion to Strike Evidence in Reply Memorandum, Docket No. 813, filed December 10, 2019.
[13] Order Re: [Turnover Motion], Docket No. 866, filed March 2, 2020.
[14] Authentication of Exhibits for [Turnover Motion], Docket No. 883, filed March 16, 2020.
[15] Objection to Receiver's Authentication of Exhibits in Support of [Turnover Motion], Docket No. 890, filed March 24, 2020.
[16] Docket Text Order, Docket No. 916, filed April 23, 2020 (indicating ruling and directing Receiver's counsel to prepare a proposed order).

fact and conclusions of law and a proposed order to counsel for Glenda Johnson for review and comment. Glenda Johnson objected to certain aspects of the draft decision and order ("Second Objection").[17] After the deadline for review and comment passed, the Receiver submitted a final draft to the Court. The Receiver also responded to the Second Objection.[18] After careful consideration of all evidence, submissions, and materials, these final Findings of Fact, Conclusions of Law, and Order are entered.

## TABLE OF CONTENTS

I.        OVERVIEW ................................................................................................1

II.       FINDINGS OF FACT...............................................................................5

    A.    Real Properties Titled in the Name of Glenda Johnson. .........................5

        i.      Description of Properties, Role of Glenda Johnson...................................5

        ii.     Sources of Funds for Purchase of Millard County Parcel No's HD-3511 and HD-3511-1. ...................................................................................6

        iii.    Sources of Funds for Purchase of Millard County Parcel No. DO-4568-1. .......................................................................................................8

        iv.     Sources of Funds for Purchase of Millard County Parcel No. MA-2662-B. ......................................................................................................10

        v.      Sources of Funds for Purchase of Millard County Parcel No's. HD-4606-2 and 4606-2-1. ...............................................................................11

        vi.     Sources of Funds for Purchase of Millard County Parcel No. HD-4648.............................................................................................................13

        vii.    Sources of Funds for Purchase of Condominium in Payson, Utah (Utah County Parcel No. 51:468:0132). .................................................15

        viii.   Sources of Funds for Purchase of Sherwood Drive Home (Millard County Parcel No. DO-SS-136&137)......................................................16

        ix.     Sources of Funds for Purchase of Home in West Mountain, Utah (Utah County Parcel No. 55:718:0006). .................................................18

        x.      Sources of Funds for Purchase of Millard County Parcel No's

---

[17] Verified Objection to [Proposed] Decision and Order Granting Turnover Motion, Docket No. 930, filed May 22, 2020.

[18] Receiver's Response to [Second Objection], Docket No. 932, filed May 29, 2020.

|  |  | 4805, 4806-A, and 4806-B........................................................................ 20 |
|  | xi. | Sources of Funds for Purchase of California Condominium (Los Angeles County Parcel No. 2482-027-174).................................... 22 |
|  | xii. | Glenda Johnson Previously Acknowledged that Certain Properties Did Not Belong to Her. ......................................................... 23 |
|  | xiii. | The Extent to Which Glenda Johnson's Personal Funds Were Used for These Property Purchases................................................ 24 |

| B. | Transfer of Funds from Receivership Entities to Glenda Johnson Bank Accounts. ......................................................................... 25 |

| III. | Conclusions of Law ....................................................................................27 |

| A. | The Receiver has the Power and the Obligation to Bring Legal Action to Recover Receivership Property and the Court has the Authority to Order Turnover in a Summary Proceeding. .............................................. 27 |

| B. | The Undisputed Facts Set forth in the Turnover Motion are Admissible............. 32 |

| C. | Glenda Johnson's Motion to Strike...................................................... 37 |

| D. | Glenda Johnson's Objection. ............................................................. 39 |

| E. | The Alleged Contact between Solstice and Glenda Johnson Does Not Create Issues of Fact. .................................................................... 41 |

| F. | Turnover and Transfer of Receivership Assets is Appropriate Here.................. 44 |

| IV. | ORDER ........................................................................................47 |

## II.   FINDINGS OF FACT

The following factual statements from the Receiver's Turnover Motion are not disputed.[19]

### A.   Real Properties Titled in the Name of Glenda Johnson.

#### i.   Description of Properties, Role of Glenda Johnson.

1.    Glenda Johnson currently is the record owner of the 14 properties listed in the table below:

| Location | Size[20] | Tax No. | CRO Cite[21] |
|---|---|---|---|
| Millard Co., UT | 160.00 | 4805 | ¶20a |
| Millard Co., UT | 640.00 | 4806-A | ¶20b |
| Millard Co., UT | 320.00 | 4806-B | ¶20c |
| Millard Co., UT | 3.46 | DO-4568-1 | ¶20j |
| Millard Co., UT | 0.58 | DO-SS-136&137 | ¶20k |
| Millard Co., UT | 600.00 | HD-3511 | ¶20l |
| Millard Co., UT | 40.00 | HD-3511-1 | ¶20m |
| Millard Co., UT | 67.50 | HD-4606-2 | ¶20o |
| Millard Co., UT | 5.00 | HD-4606-2-1 | ¶20p |
| Millard Co., UT | 80.00 | HD-4648 | ¶20s |
| Millard Co., UT | 360.00 | MA-2662-B | ¶20x |
| Utah County, UT | 5.25 | 55:718:0006 | ¶20y |
| Utah County, UT | 0.03 | 51:468:0132 | ¶20z |
| Los Angeles, CA |  | 2842:027:174 | ¶20aa |

2.    Glenda Johnson is the wife of Receivership Defendant Neldon Johnson.[22]

---

[19] Opposition, Docket No. 784, filed October 11, 2019.
[20] Size is measured by acres.
[21] This is a reference to the paragraph number in the CRO, Docket No. 491.
[22] Turnover Motion at 3, Docket No. 757, filed August 30, 2019.; *see* Turnover Motion, Exhibit 11-6, Docket No. 757-11, filed August 30, 2019 (Deposition of Glenda Johnson, May 1, 2019) ("May 1 Deposition") at 57:6-10.

3.      Glenda Johnson was the primary bookkeeper for many of the Receivership Entities and had unfettered access to entity bank accounts and records. She was the primary signer of checks issued on behalf of RaPower, IAS, Cobblestone Centre, and others.[23]

4.      Glenda Johnson frequently issued checks to herself—from Receivership Entities—that she deposited in her personal bank accounts.[24]

### ii.   Sources of Funds for Purchase of Millard County Parcel Nos. HD-3511 and HD-3511-1.

5.      Glenda Johnson transferred $70,000.00 from the RaPower savings account at Zions Bank to the RaPower checking account at Zions Bank on December 14, 2011.[25] On the same day, she wrote a $70,000.00 check from the RaPower checking account (check #195) to herself and deposited it into her personal checking account at Zions Bank.[26] RaPower's QuickBooks records recorded this as a "Real Estate Purchase" expense.[27]

6.      The same day, Glenda Johnson withdrew $69,776.68 from her personal checking account at Zions Bank.[28] Glenda Johnson then purchased a cashier's check from Zions Bank in the amount of $69,776.68.[29]

---

[23] Turnover Motion at 3-4, Docket No. 757, filed August 30, 2019; Declaration of Receiver R. Wayne Klein, ¶ 8, Docket No. 802-7, filed November 22, 2019; July 8 [sic], 2019 Declaration of Glenda Johnson Relating to Compliance Verification of [CRO ¶ 24], Docket No. 714, filed July 5, 2019.
[24] Turnover Motion at 4, Docket No. 757, filed August 30, 2019; Exhibit 1-2, Docket No. 757-1, filed August 30, 2019.
[25] Turnover Motion, Exhibits 1 and 1-1, Docket No. 757-1, filed August 30, 2019.
[26] Turnover Motion, Exhibits 1-2, 1-4, and 1-5, Docket No. 757-1, filed August 30, 2019.
[27] Turnover Motion, Exhibit 1-3, Docket No. 757-1, filed August 30, 2019.
[28] Turnover Motion, Exhibits 1-4 and 1-6, Docket No. 757-1, filed August 30, 2019.
[29] Turnover Motion, Exhibits 1-6, 1-7, and 1-9, Docket No. 757-1, filed August 30, 2019.

7.    Glenda Johnson's checkbook register for her personal bank account at Zions Bank includes a notation that on December 14, 2011, $69,776.68 was paid to "First American Title" for "land."[30]

8.    The sale of this property closed on December 16, 2011, with Glenda Johnson as the buyer. After payment of closing costs and a $500.00 broker credit, the net paid for this property was $69,776.68.[31] A graphic demonstrating these transfers follows.



9.    Title to this property was recorded in the name of Glenda Johnson on December 16, 2011.[32]

10.    All funds used to purchase this property came from Receivership Entities and were not funds Glenda Johnson obtained from other sources. Glenda Johnson retained $223.32 of Receivership funds deposited into her personal bank account.

11.    This property was identified in the CRO at paragraphs 20(l) and 20(m).

---

[30] Turnover Motion, Exhibit 1-7, Docket No. 757-1, filed August 30, 2019.
[31] Turnover Motion, Exhibit 1-9, Docket No. 757-1, filed August 30, 2019.
[32] Turnover Motion, Exhibit 1-8, Docket No. 757-1, filed August 30, 2019.

### iii.   Sources of Funds for Purchase of Millard County Parcel No. DO-4568-1.

12.     On January 16, 2012, the closing balance of Glenda Johnson's checking account at Zions Bank was $1,949.61.[33]

13.     On January 17, 2012, Glenda Johnson wrote check #495 in the amount of $100,000.00 from her personal bank account at Bank of American Fork[34] and deposited the $100,000.00 into her personal checking account at Zions Bank.[35] This amount represented proceeds from an inheritance granted to Glenda Johnson. Glenda Johnson's checkbook register includes a notation that the $100,000 was transferred to "Zions" for "building."[36]

14.     On January 18, 2012, Glenda Johnson withdrew $110,000.00 from the RaPower bank account at Zions Bank[37] and deposited the $110,000.00 into her personal checking account at Zions Bank the same day.[38] Glenda Johnson recorded this $110,000 transfer in the "Real Estate Purchase" expense account of RaPower's QuickBooks records and included a notation: "Oasis Building."[39]

15.     On January 18, 2012, Glenda Johnson withdrew $210,174.15 from her personal checking account at Zions Bank for the purchase of this property.[40] A notation in Glenda Johnson's checkbook register states that the $210,174.15 was paid to "First American Title" for "building."[41]

---

[33] Turnover Motion, Exhibit 2-1, Docket No. 757-2, filed August 30, 2019.
[34] Turnover Motion, Exhibit 2-4, Docket No. 757-2, filed August 30, 2019.
[35] Turnover Motion, Exhibit 2-3, Docket No. 757-2, filed August 30, 2019.
[36] Turnover Motion, Exhibit 2-5, Docket No. 757-2, filed August 30, 2019.
[37] Turnover Motion, Exhibit 2, Docket No. 757-2, filed August 30, 2019.
[38] Turnover Motion, Exhibit 2-1, Docket No. 757-2, filed August 30, 2019.
[39] Turnover Motion Exhibit, 2-2, Docket No. 757-2, filed August 30, 2019. The "Oasis Building" is sometimes also described as "warehouse."
[40] See Turnover Motion, Exhibit 2-1, Docket No. 757-2, filed August 30, 2019.
[41] See Turnover Motion, Exhibit 2-5, Docket No. 757-2, filed August 30, 2019.

16. The closing for this property purchase was performed by First American Title. The purchase price for the property was $210,000.00. After closing costs and credits, the amount due at closing was $210,174.15.[42] A graphic demonstrating these transfers follows.



17. Title to this property was recorded in the name of Glenda Johnson on January 19, 2012.[43]

18. At least $110,000.00 of the funds used to purchase this property came from RaPower and were not personal funds of Glenda Johnson.

19. At least $100,000.00 and as much as $100,174.15 of the funds used to purchase this property were personal funds of Glenda Johnson.[44]

20. This property was identified in the CRO at paragraph 20(j).

---

[42] Turnover Motion, Exhibit 2-6, Docket No. 757-2, filed August 30, 2019.
[43] Turnover Motion, Exhibit 2-7, Docket No. 757-2, filed August 30, 2019.
[44] Because the Receiver only traced $110,000.00 of the funds as coming from a Receivership Entity, the Court will give Glenda Johnson credit against the purchase of this property for all amounts beyond $110,000.00.

### iv. Sources of Funds for Purchase of Millard County Parcel No. MA-2662-B.

21.     On November 15, 2012, Glenda Johnson transferred $32,334.80 from RaPower's checking account at Millard County Credit Union[45] to Glenda Johnson's personal savings account at Millard County Credit Union.[46]

22.     The same day, Glenda Johnson wired $32,334.80 from her personal savings account at Millard County Credit Union to William B. Cullen for the purchase of a 360-acre parcel of land in Millard County.[47]

23.     The purchase price for this property was $32,000. After inclusion of closing costs, the final amount due at closing was $32,334.80.[48] A graphic demonstrating these transfers follows.



24.     On November 21, 2012, title for this property was recorded in the name of Glenda Johnson.[49]

---

[45] Turnover Motion, Exhibit 3, Docket No. 757-3, filed August 30, 2019.
[46] Turnover Motion, Exhibit 3-1, Docket No. 757-3, filed August 30, 2019.
[47] *Id*.
[48] Turnover Motion, Exhibit 3-2, Docket No. 757-3, filed August 30, 2019.
[49] Turnover Motion, Exhibit 3-3, Docket No. 757-3, filed August 30, 2019.

25.     All funds used to purchase this property came from Receivership Entities and were not funds Glenda Johnson obtained from other sources.

26.     This property was identified in the CRO at paragraph 20(x).

### v. Sources of Funds for Purchase of Millard County Parcel Nos. HD-4606-2 and 4606-2-1.

27.     On January 16, 2013, Glenda Johnson withdrew $168,000.00 from the RaPower bank account at Wells Fargo Bank.[50] She recorded this withdrawal in the QuickBooks records of RaPower as a "Real Estate Purchase" expense, with a notation the expenditure was for "House & Land – Abraham."[51]

28.     The same day, Glenda Johnson deposited $168,000.00 into her personal checking account at Millard County Credit Union.[52] Before this deposit, the balance in her personal bank account at Millard County Credit Union was $14,953.88.[53]

29.     On January 17, 2013, Glenda Johnson wired $162,693.33 from her personal bank account at Millard County Credit Union.[54] Glenda Johnson made a notation on the bank statement for this account, next to this transaction, that the transfer was for "house."[55] The description in Glenda Johnson's checkbook register stated the $162,693.33 was for "home on 7000."[56]

---

[50] Turnover Motion, Exhibits 4 and 4-1, Docket No. 757-4, filed August 30, 2019.
[51] Turnover Motion, Exhibit 4-2, Docket No. 757-4, filed August 30, 2019.
[52] Turnover Motion, Exhibits 4-3 and 4-4, Docket No. 757-4, filed August 30, 2019.
[53] Turnover Motion, Exhibit 4-3, Docket No. 757-4, filed August 30, 2019.
[54] *Id*.
[55] *See* Turnover Motion, Exhibit 4-3, Docket No. 757-4, filed August 30, 2019.
[56] Turnover Motion, Exhibit 4-5, Docket No. 757-4, filed August 30, 2019.

30.     After deduction for a $500.00 earnest money deposit and a $5,040.00 buyer's agent credit, the purchase price for these two properties was $162,693.33.[57] A graphic demonstrating these transfers follows.



31.     On January 18, 2013, title to these two related parcels of real estate was recorded in the name of Glenda Johnson.[58] In connection with the property sale, Water Right #68-2388 was conveyed by the seller to Glenda Johnson.[59]

32.     Of the $168,000.00 in RaPower money that Glenda Johnson transferred to her personal bank account for this transaction, $162,693.33 was used for the purchase of this property and associated water right. Glenda Johnson retained the remaining $5,306.67.

33.     This property was identified in the CRO at paragraphs 20(o) and 20(p).

---

[57] Turnover Motion, Exhibit 4-6, Docket No. 757-4, filed August 30, 2019.
[58] Turnover Motion, Exhibit 4-7, Docket No. 757-4, filed August 30, 2019.
[59] *Id*.

### vi.  Sources of Funds for Purchase of Millard County Parcel No. HD-4648.

34.     On September 9, 2012, the balance in Glenda Johnson's savings account at Millard County Credit Union was $9,295.80.[60]

35.     On September 10, 2012, Glenda Johnson transferred $87,976.48 from the RaPower checking account at Zions Bank[61] to Glenda Johnson's personal savings account at Millard County Credit Union.[62]

36.     On November 15, 2012, Glenda Johnson transferred $32,334.80 from the RaPower checking account at Millard County Credit Union[63] to Glenda Johnson's personal savings account at Millard County Credit Union.[64] The same day, Glenda Johnson wired $32,334.80 to the seller of Millard County Parcel No. MA-2662-B,[65] as discussed above in Part I.A.iv. This left Glenda Johnson's personal savings account at Millard County Credit Union with the same balance at the end of the day as the beginning balance for that day.

37.     The only other deposits into Glenda Johnson's personal savings account at Millard County Credit Union between September 10, 2012 and February 25, 2013 were interest payments totaling $42.12.

38.     On February 26, 2013, Glenda Johnson wired $20,269.07 from her personal savings account at Millard County Credit Union to Tao-Chen Chao.[66]

39.     The $20,269.07 paid to Chao was for the purchase of the HD-4648 property.[67]

---

[60] Turnover Motion, Exhibit 5-1, Docket No. 757-5, filed August 30, 2019.
[61] Turnover Motion, Exhibit 5-2, Docket No. 757-5, filed August 30, 2019.
[62] Turnover Motion, Exhibit 5-1, Docket No. 757-5, filed August 30, 2019.
[63] Turnover Motion, Exhibit 3, Docket No. 757-3, filed August 30, 2019.
[64] Turnover Motion, Exhibit 3-1, Docket No. 757-3, filed August 30, 2019.
[65] *Id*.
[66] Turnover Motion, Exhibits 5, 5-3, and 5-4, Docket No. 757-5, filed August 30, 2019.
[67] *Id*.

40.     After payment of closing costs and allowance for property taxes, the final
purchase amount for this property was $20,269.07.[68] A graphic demonstrating these transfers
follows.



41.     On February 27, 2013, title for this property was recorded in the name of Glenda
Johnson.[69]

42.     This property was identified in the CRO at paragraph 20(s).

43.     The funds for the purchase of this property from Chao could have come only from
the $87,976.48 transferred into Glenda Johnson's personal savings account from RaPower on
September 10, 2012. Glenda Johnson retained the $67,707.41 difference between the $87,976.48
transferred into her account on September 10, 2012 and the $20,269.07 paid to Chao for the
purchase of the property.

---

[68] Turnover Motion, Exhibit 5-3, Docket No. 757-5, filed August 30, 2019.
[69] Turnover Motion, Exhibit 5-4, Docket No. 757-5, filed August 30, 2019.

### vii. Sources of Funds for Purchase of Condominium in Payson, Utah (Utah County Parcel No. 51:468:0132).

44.     On May 31, 2013, Glenda Johnson signed an agreement to purchase a condominium in Payson, Utah from Tonidon Enterprises for $120,000.00. After the inclusion of closing costs, the final purchase amount was $120,969.80.[70]

45.     On May 31, 2013, Glenda Johnson had Zions Bank issue her a $75,413.91 cashier's check from the RaPower bank account at Zions Bank.[71] On May 31, 2013, Glenda Johnson obtained a $44,620.00 cashier's check from the RaPower bank account at Wells Fargo Bank payable to her.[72] These funds were used to purchase this property. A total of $120,033.91 of the purchase price for this property were funds from RaPower bank accounts.

46.     Glenda Johnson recorded the $44,620.00 payment in the RaPower QuickBooks records as a "Real Estate Purchase" expense, with a notation that the payment was for "Purchase of Company Condo."[73]

47.     Glenda Johnson wrote check #215 in the amount of $1,000.00 from her personal bank account as a down payment for the purchase of the Payson condominium.[74] A graphic demonstrating these transfers follows.

---

[70] Turnover Motion, Exhibit 6-5, Docket No. 757-6, filed August 30, 2019.
[71] Turnover Motion, Exhibit 6, Docket No. 757-6, filed August 30, 2019. This amount represented the proceeds of a certificate of deposit that RaPower held at Zions Bank.
[72] Turnover Motion, Exhibits 6, 6-2, and 6-3, Docket No. 757-6, filed August 30, 2019.
[73] Turnover Motion, Exhibit 6-1, Docket No. 757-6, filed August 30, 2019.
[74] Turnover Motion, Exhibit 6-4, Docket No. 757-6, filed August 30, 2019. The two cashier's checks from RaPower bank accounts total $120,033.91. Thus, an additional $935.89 was needed to complete the purchase. Glenda Johnson's check #215 for $1,000.00 as down payment for this property is $64.11 more than was needed to complete the purchase. The Receiver indicated he does not know how these numbers are reconciled against the property closing statement. In the end, resolving the discrepancy is unnecessary since the amount paid from RaPower funds is known.



48.     Title for this property was recorded in the name of Glenda Johnson on June 3, 2013.[75]

49.     Of the $120,969.80 final purchase price, $120,033.91 derived from RaPower funds and $935.89 derived from funds of Glenda Johnson.

50.     This property was identified in the CRO at paragraph 20(z).

### viii.  Sources of Funds for Purchase of Sherwood Drive Home (Millard County Parcel No. DO-SS-136&137).

51.     On August 4, 2014, Glenda Johnson wrote check #3038 payable to First American Title Company, in the amount of $1,000.00, from the bank account of Cobblestone Centre at Wells Fargo Bank. The memo line of the check contained the notation: "Earnest Money for property – 424 South Sherwood Drive."[76]

52.     The agreed-upon purchase price for this property was $315,000.00.[77]

---

[75] Turnover Motion, Exhibit 6-6, Docket No. 757-6, filed August 30, 2019.
[76] Turnover Motion, Exhibit 7, Docket No. 757-7, filed August 30, 2019.
[77] Turnover Motion, Exhibit 7-3, Docket No. 757-7, filed August 30, 2019.

53.     On August 7, 2014, Glenda Johnson transferred $315,000.00 from the Wells Fargo bank account of RaPower[78] to the Wells Fargo bank account of Cobblestone Centre.[79]

54.     The property closing statement stated that after the addition of closing costs and credits for the down payment and tax payments, the final amount due at closing was $312,893.32.[80]

55.     On August 7, 2014, Glenda Johnson wired $312,893.32 from the Cobblestone Centre account at Wells Fargo Bank to First American Title Company.[81] A graphic demonstrating these transfers follows.



56.     On August 8, 2014, title to this property was recorded in the name of Glenda Johnson.[82]

57.     All funds used to purchase this property came from Receivership Entities.

---

[78] Turnover Motion, Exhibit 7-1, Docket No. 757-7, filed August 30, 2019.
[79] Turnover Motion, Exhibit 7-2, Docket No. 757-7, filed August 30, 2019.
[80] Turnover Motion, Exhibit 7-3, Docket No. 757-7, filed August 30, 2019.
[81] Turnover Motion, Exhibit 7-2, Docket No. 757-7, filed August 30, 2019.
[82] Turnover Motion, Exhibit 7-4, Docket No. 757-7, filed August 30, 2019.

58.     This property was identified in the CRO at paragraph 20(k).

    ix.  **Sources of Funds for Purchase of Home in West Mountain, Utah (Utah County Parcel No. 55:718:0006).**

59.     In November 2014, Glenda Johnson signed an agreement to purchase a home and 5.5 acres of property in West Mountain, Utah at an auction for $432,929.00. After the addition of closing costs, the amount owed for the purchase was $433,613.75.[83]

60.     On November 21, 2014, Glenda Johnson transferred $433,000.00 from the RaPower bank account at Wells Fargo Bank[84] to her personal checking account at Wells Fargo.[85]

61.     Prior to the transfer of the $433,000.00 from RaPower, Glenda Johnson's bank account at Wells Fargo Bank had a balance of zero.[86]

62.     The same day, Glenda Johnson withdrew an additional $12,420.00 from the RaPower bank account at Wells Fargo in the form of a cashier's check and paid this amount as an earnest money deposit on this property.[87] This reduced the amount owed at closing to $421,193.75.[88]

63.     On December 15, 2014, Glenda Johnson wired $421,193.75 from her personal Wells Fargo bank account to Meridian Title.[89] A graphic demonstrating these transfers follows.

---

[83] Turnover Motion, Exhibit 8-5, Docket No. 757-8, filed August 30, 2019.
[84] Turnover Motion, Exhibit 8, Docket No. 757-8, filed August 30, 2019.
[85] Turnover Motion, Exhibit 8-2, Docket No. 757-8, filed August 30, 2019.
[86] *Id.*
[87] Turnover Motion, Exhibit 8-1, Docket No. 757-8, filed August 30, 2019. *See also* Turnover Motion Exhibits 8 and 8.5, Docket No. 757-8, filed August 30, 2019.
[88] Turnover Motion, Exhibit 8-5, Docket No. 757-8, filed August 30, 2019.
[89] Turnover Motion, Exhibit 8-3, Docket No. 757-8, filed August 30, 2019.



64.     In the RaPower QuickBooks records, Glenda Johnson recorded both the $433,000.00 and the $12,420.00 payments as "Real Estate Purchase" expenses and input a notation for the payments as "Purchase for Company House in Payson."[90]

65.     On December 15, 2014, title to this property was recorded in the name of Glenda Johnson.[91]

66.     The purchase price for this property included a water right from a well on the property. This water right, #51-7009, was also recorded in the name of Glenda Johnson.

67.     Out of the $445,420.00 taken from the RaPower bank account at Wells Fargo Bank, $433,613.75 was used to purchase the property and $11,806.25 was retained in Glenda Johnson's personal bank account at Wells Fargo.

68.     This property was identified in the CRO at paragraph 20(y).

---

[90] Turnover Motion, Exhibit 8-4, Docket No. 757-8, filed August 30, 2019.
[91] Turnover Motion, Exhibit 8-6, Docket No. 757-8, filed August 30, 2019.

### x.  Sources of Funds for Purchase of Millard County Parcel Nos. 4805, 4806-A, and 4806-B.

69.     On October 15, 2014, Glenda Johnson paid check #1115 in the amount of $1,000.00 from the Cobblestone Centre bank account at Wells Fargo Bank to Bulloch Realty.[92] The $1,000.00 was an earnest money deposit for the purchase of three related real estate parcels: 4806, 4806-A, and 4806-B.[93]

70.     The closing on this property sale did not occur until December 2014.[94]

71.     After giving credit for the earnest money deposit and adding closing costs, the amount owed at closing was $61,618.85.[95]

72.     On December 18, 2014, the balance in Glenda Johnson's personal bank account was $11,778.38.[96] On December 19, 2014, Glenda Johnson transferred $61,000.00 from the RaPower bank account at Wells Fargo Bank[97] to her personal bank account at Wells Fargo Bank.[98] The Wells Fargo bank account statement description for this transfer says "Online Transfer to Johnson G . . . for Property 225 W Main St. Delta UT."[99] This transfer was recorded in RaPower's QuickBooks records as a "Real Estate Purchase" expense.[100]

---

[92] Turnover Motion, Exhibits 9 and 9-1, Docket No. 757-9, filed August 30, 2019.

[93] Turnover Motion, Exhibits 9 and 9-5, Docket No. 757-9, filed August 30, 2019

[94] Turnover Motion, Exhibits 9-5 and 9-6, Docket No. 757-9, filed August 30, 2019

[95] Turnover Motion, Exhibit 9-5, Docket No. 757-9, filed August 30, 2019; Declaration of the Receiver, R. Wayne Klein, Regarding Authentication of Exhibits, Exhibit J, Docket No. 883-1, filed March 16, 2020.

[96] *See* Turnover Motion, Exhibit 9-4, Docket No. 757-9, filed August 30, 2019. At the time of this deposit, all prior deposits to this account came from RaPower, with the exception of one $2.13 interest payment. *See* Turnover Motion, Exhibits 8 and 8-2, Docket No. 757-8, filed August 30, 2019.

[97] Turnover Motion, Exhibit 9-2, Docket No. 757-9, filed August 30, 2019.

[98] Turnover Motion, Exhibit 9-4, Docket No. 757-9, filed August 30, 2019.

[99] Turnover Motion, Exhibit 9-2, Docket No. 757-9, filed August 30, 2019.

[100] Turnover Motion, Exhibit 9-3, Docket No. 757-9, filed August 30, 2019.

73.    On December 19, 2014—the same day as the transfer of RaPower funds to Glenda Johnson—Glenda Johnson wired $61,618.85 from her personal bank account to First American Title Company.[101] A graphic demonstrating these transfers follows.



74.    Title to these three properties was recorded in the name of Glenda Johnson on December 30, 2014.[102]

75.    Of the $62,618.85 in total purchase funds, $62,000.00 came from Cobblestone Centre and RaPower. The remaining $618.85 were funds already in Glenda Johnson's bank account that she previously received from RaPower.[103]

76.    These properties were identified in the CRO at paragraphs 20(a) – (c).

---

[101] Turnover Motion, Exhibit 9-4, Docket No. 757-9, filed August 30, 2019.
[102] Turnover Motion, Exhibit 9-6, Docket No. 757-9, filed August 30, 2019.
[103] *See* Turnover Motion, Exhibits 8 and 8-2, Docket No. 757-8, filed August 30, 2019. Because the Receiver presented evidence that the funds in Glenda Johnson's personal bank account before the deposit of funds from RaPower came from RaPower, this $618.85 will be deemed Receivership funds, not Glenda Johnson's personal funds.

xi.   **Sources of Funds for Purchase of California Condominium (Los Angeles County Parcel No. 2482-027-174).**

77.    On March 22, 2015, the balance in Glenda Johnson's personal bank account at Wells Fargo Bank was $11,117.50.[104]

78.    On March 23, 2015, Glenda Johnson transferred $300,000.00 from the RaPower bank account at Wells Fargo[105] to her personal bank account at Wells Fargo.[106] Glenda Johnson recorded this payment in the RaPower QuickBooks records as a "Commission Expense" for "Condo in California."[107]

79.    On March 31, 2015, Glenda Johnson wired $7,000.00 from her personal bank account at Wells Fargo to Pinnacle Estate Properties as an earnest money deposit on property in Newhall, California.[108] Glenda Johnson made notations on her bank account statement dated April 8, 2015 that the $300,000.00 deposit and the $7,000.00 expenditure from the account were for "California Condo."[109]

80.    On April 23, 2015, Glenda Johnson wired $240,582.83 from her personal bank account at Wells Fargo to Pinnacle Estate Properties.[110] Glenda Johnson made notations on her bank statement that this payment was for "California Condo."[111]

81.    On April 27, 2015, title to this property was recorded in the name of Glenda Johnson.[112]

---

[104] Turnover Motion, Exhibit 10-3, Docket No. 757-10, filed August 30, 2019.
[105] Turnover Motion, Exhibits 10 and 10-1, Docket No. 757-10, filed August 30, 2019.
[106] Turnover Motion, Exhibits 10-3 and 10-4, Docket No. 757-10, filed August 30, 2019.
[107] Turnover Motion, Exhibit 10-2, Docket No. 757-10, filed August 30, 2019.
[108] Turnover Motion, Exhibit 10-3, Docket No. 757-10, filed August 30, 2019.
[109] *Id.*
[110] Turnover Motion, Exhibit 10-5, Docket No. 757-10, filed August 30, 2019.
[111] *Id.*
[112] Turnover Motion, Exhibit 10-6, Docket No. 757-10, filed August 30, 2019.

82.     The total purchase price for this property was $247,582.83. The $52,417.17 difference between this amount and the $300,000.00 that Glenda Johnson transferred into her account from RaPower was retained by Glenda Johnson in her personal bank account. A graphic demonstrating these transfers follows.



83.     On April 27, 2015, Neldon Johnson signed a quitclaim deed, transferring to Glenda Johnson any interest he had in the property.[113] Glenda Johnson gave no consideration to Neldon Johnson for this transfer.

84.     This property was identified in the CRO at paragraph 20(aa).

### xii.  Glenda Johnson Previously Acknowledged that Certain Properties Did Not Belong to Her.

85.     In her May 1, 2019 deposition, Glenda Johnson testified "I don't consider I am the owner of the home. I know my name is on the title . . . . Just because my name is on the title doesn't mean that I own it."[114]

---

[113] *Id.*
[114] Reply in Support of Turnover Motion, Exhibit A, Docket No. 802-2 (May 1 Deposition at 133:19-25). This deposition excerpt related to the Sherwood Drive property in Delta, Utah.

86.     Glenda Johnson made notations in Receivership Entity QuickBooks records that the Payson condo was a "Company Condo."[115]

87.     Glenda Johnson made notations in QuickBooks records that the Payson home was a "Company House."[116]

### xiii.  The Extent to Which Glenda Johnson's Personal Funds Were Used for These Property Purchases.

88.     As noted in the above discussion of each of the properties, in some instances personal funds of Glenda Johnson funds were used as part of the purchase price of the properties. In other instances, Glenda Johnson retained a portion of the funds transferred into her personal bank account by RaPower or Cobblestone that were not used for the property purchases.

89.     The table below summarizes these uses of Glenda Johnson's personal funds.

| Property (APN or Description) | Total Purchase Price | Receivership Funds Used | Glenda Johnson Personal Funds Used | Funds Retained by Glenda Johnson |
|---|---|---|---|---|
| HD-3511,3511-1 | $69,776.68 | $70,000.00 | $0.00 | $223.32 |
| DO-4568-1 | $210,174.15 | $110,000.00 | $100,174.15 | $0.00 |
| MA-2662-B | $32,334.80 | $32,334.80 | $0.00 | $0.00 |
| HD-4606-2, 4606-2-1 | $162,693.33 | $168,000.00 | $0.00 | $5,306.67 |
| HD-4648 | $20,269.07 | $87,976.48 | $0.00 | $67,707.41 |
| Payson Condo | $120,969.80 | $120,033.91 | $935.89 | $0.00 |
| Sherwood Drive | $312,893.32 | $312,893.32 | $0.00 | $0.00 |
| West Mountain | $433,613.75 | $445,420.00 | $0.00 | $11,806.25 |
| 4805, 4806-A & B | $62,618.85 | $62,618.85 | $0.00 | $0.00 |
| California Condo | $247,582.83 | $300,000.00 | $0.00 | $52,417.17 |
| **Totals** | $1,672,926.58 | $1,646,658.51 | $101,110.04 | $137,460.82 |

90.     While Glenda Johnson used inheritance funds and funds from her personal bank account (totaling $101,110.04) to supplement the Receivership Entity funds used to purchase two

---

[115] *See* Section I.A.vii, above.
[116] *See* Section I.A.ix, above.

properties, she retained $137,460.82 in Receivership Entity funds that were deposited into her personal bank accounts. Thus, she received and retained $36,350.78 more in Receivership Entity funds from these real estate transactions than the amount of personal funds she used for these purchases.

**B.      Transfer of Funds from Receivership Entities to Glenda Johnson Bank Accounts.**

91.      Trial in this matter concluded June 22, 2018. On that date, the Court issued findings on the record, including a finding that the Receivership defendants were engaged in a "massive fraud."[117] The Court told defendants the Court would issue an injunction and order disgorgement of revenues.[118]

92.      Also, on June 22, 2018, the Court issued an *Initial Order and Injunction After Trial* stating that an injunction and other equitable relief were necessary and appropriate.[119]

93.      That same day, Glenda Johnson transferred $140,000.00 from the RaPower bank account at Bank of American Fork (Acct. #1198)[120] to the Cobblestone Centre bank account at Bank of American Fork (Acct. #3739).[121]

94.      Glenda Johnson then transferred (still the same day) $1,945,500.00 from the Cobblestone Centre bank account at Bank of American Fork[122] to her personal bank account at Bank of American Fork.[123] After depositing this amount into her personal bank account, her

---

[117] Tr. Jun. 22, 2018, at 2515:5 – 2515:6, Docket No. 421, filed June 29, 2018.
[118] *Id*. at 2515:10 – 2515:11.
[119] Docket No. 413, filed June 22, 2018.
[120] Turnover Motion, Exhibit 11, Docket No. 757-11, filed August 30, 2019.
[121] Turnover Motion, Exhibit 11-1, Docket No. 757-11, filed August 30, 2019.
[122] *Id*.
[123] Turnover Motion, Exhibit 11-2, Docket No. 757-11, filed August 30, 2019.

personal bank account had a balance of $2,216,275.60.[124] A graphic demonstrating these transfers follows.



95.     With the exception of interest, there were no other deposits into Glenda Johnson's personal bank account at Bank of American Fork between June 22, 2018 and August 30, 2019, the date of the Turnover Motion.[125]

96.     Between June 2018 and March 2019, significant funds were depleted from Glenda Johnson's personal bank account at Bank of American Fork, including $200,000.00 that Glenda Johnson transferred to a bank account that Glenda Johnson described in some records as the "Folks account" at Bank of American Fork.[126] Glenda Johnson controls the Folks account at Bank of American Fork.[127]

---

[124] *Id*. Two weeks before, on June 6, 2018, Glenda Johnson had transferred $120,000.00 from IAS to her personal bank account, with a notation the payment was for "consulting." *Id.* Thus, $2,065,500.00 of the amount in Glenda Johnson's personal bank account had been deposited into that account from Cobblestone, IAS, and RaPower after June 5, 2018.

[125] *Id.*; Turnover Motion, Exhibit 11-4, Docket No. 757-11, filed August 30, 2019.

[126] *Id.*; Turnover Motion, Exhibits 11-3, 11-5 and 11-6 (May 1 Deposition at 199:10-17), Docket No. 757-11, filed August 30, 2019.

[127] Glenda Johnson's parents (her "folks"), Norman and Eldoris Fenn, passed away in 2009 and 2010, respectively. Turnover Motion, Exhibit 11-6, Docket No. 757-11, filed August 30, 2019 (May 1 Deposition at 59:7-11; 199:10-17); Stipulated Order Regarding Funds Held by Glenda Johnson, Docket No. 672, filed May 24, 2019.

97.     On May 24, 2019, the Court ordered that all funds in Glenda Johnson's personal bank account at Bank of American Fork and the "Folks" account at Bank of American Fork be preserved and that the balances in the accounts as of May 3, 2019 be maintained.[128]

98.     As of May 3, 2019, the balance in Glenda Johnson's personal bank account was $1,206,621.39 and the balance in the "Folks" bank account was $200,414.14.[129]

## III.    Conclusions of Law

### A.    The Receiver has the Power and the Obligation to Bring Legal Action to Recover Receivership Property and the Court has the Authority to Order Turnover in a Summary Proceeding.

The Receiver brings his Turnover Motion against Glenda Johnson under Rule 56 of the Federal Rules of Civil Procedure. A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[130] Facts must be supported by citation to materials in the record and the court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."[131]

Glenda Johnson objects to the Receiver's use of summary proceedings to recover the fourteen identified properties and funds transferred to Glenda Johnson on three grounds: (1) the CRO does not give the Receiver the authority to file the Turnover Motion because it seeks property that "legally belongs to Glenda Johnson;" (2) summary proceedings cannot be brought against individuals that are not defendants in the underlying action; and (3) the Motion

---

[128] *See* Stipulated Order Regarding Funds Held by Glenda Johnson, docket No. 672, filed May 24, 2019.
[129] *See* Turnover Motion, Exhibits 11-2, 11-3, 11-4, 11-5, and 11-6 (May 1 Deposition at 199:10-17), Docket No. 757-11, filed August 30, 2019.
[130] Fed. R. Civ. P. 56(a).
[131] *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990).

constitutes improper claim-splitting because the Receiver has also brought a separate lawsuit against Glenda Johnson.[132] Glenda Johnson is incorrect on all three arguments.

### i.    The Receiver has Authority

Glenda Johnson's assertion that the Receiver does not have the authority to seek recovery of property titled in Glenda Johnson's name is contrary to the CRO and the controlling case law, which grant the Receiver the authority to bring this action to recover the properties and funds, even if they are titled in the name of a non-party, such as Glenda Johnson. The CRO grants the Receiver the following powers and duties:

a.    "To use reasonable efforts to determine the nature, location and value of all property interests of each of the Receivership Defendants, including Johnson and Shepard. These property interests include, but are not limited to: monies, accounts, trusts, funds, digital currencies, securities, credits, stocks, bonds, effects, goods, chattels, intangible property (including patents and other intellectual property), real property, lands, premises, leases, claims, rights, ownership interests in domestic or foreign entities, and other assets, together with rents, profits, dividends, receivables, interest, or other income attributable thereto, of whatever kind, that the Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly."[133]

b.    "To take custody, control, and possession of all Receivership Property and records relevant thereto from the Receivership Defendants; to sue for and collect, recover, receive, and take into possession from third parties all Receivership Property and records relevant thereto."[134]

c.    "To take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property."[135]

---

[132] Opposition at 19-22, Docket No. 784, filed October 11, 2019.
[133] CRO ¶ 13.a, Docket No. 491, filed November 1, 2018.
[134] *Id.*, ¶ 13.b.
[135] *Id.*, ¶ 13.g.

d.      "To bring legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver."[136]

e.      The Receiver is also "authorized to take immediate possession of all real property of the Receivership Defendants, wherever located, including but not limited to all ownership and leasehold interests and fixtures . . . . The Receiver is authorized to take immediate possession of real property in which Receivership Defendants have a record interest, and to file a motion to take possession (a 'Possession Motion') of real property in which Receivership Defendants have a beneficial interest *even if titled in the name of another, such as a spouse* or an affiliated entity, such as a family limited partnership."[137]

f.      "[T]he Receiver is authorized, empowered, and directed to investigate the manner in which the financial and business affairs of the Receivership Defendants were conducted and, after obtaining leave of this Court, to institute such actions and legal proceedings for the benefit, and on behalf, of the receivership estates as the Receiver deems necessary and appropriate. The Receiver may seek, among other legal and equitable relief, the imposition of *constructive trusts*, *disgorgement of profits*, *asset turnover*, avoidance of fraudulent transfers, rescission, restitution, collection of debts, and such other relief from this Court as may be necessary to enforce this Order."[138]

The Court's May 3, 2019 *Memorandum Decision and Order on Receiver's Motion to Include Affiliates and Subsidiaries in Receivership* ("Affiliates Order"), which added 13 affiliated entities—including Cobblestone—to the Receivership Estate, ordered that:

a.      "The Affiliated Entities are hereby made part of the existing receivership estate, which is being administered by court-appointed receiver Wayne Klein, in accordance with the Corrected Receivership Order."[139]

b.      "In carrying out his responsibilities as receiver, the Receiver shall have all control over assets, books, records, and accounts of Affiliated Entities and all powers and rights granted to the Receiver in the Corrected Receivership Order."[140]

c.      "All other provisions of the Corrected Receivership Order shall apply to the Affiliated Entities, as they do to the Receivership Entities, to the extent necessary

---

[136] *Id.*, ¶ 13.l.
[137] *Id.*, ¶ 20 (emphasis added).
[138] *Id.*, ¶ 60 (emphasis added).
[139] Docket No. 636, Order ¶ 2.
[140] *Id.*, ¶ 7.

and appropriate to allow the Receiver to accomplish his duties under the Corrected Receivership Order."[141]

The CRO and the Affiliates Order grant the necessary authority to the Receiver to investigate, take possession or bring legal action to collect, recover, receive and/or take possession of all Receivership property, including real property in which Receivership Entities have a beneficial interest, "*even if titled in the name of another, such as a spouse*."[142] The CRO defined "Receivership Property" as including property "that the Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly."[143] The CRO specifically included properties that were in the possession of third parties.[144] Thus, the Receiver has the authority and duty to bring this action to recover Receivership Property, even if it is titled in the name of Glenda Johnson.

**ii.    Summary Proceedings are Appropriate**

It is well established that summary proceedings are appropriate as part of the district court's "broad powers and wide discretion to determine relief in an equity receivership."[145] "Federal district courts have wide discretion in granting relief in an equity receivership and may use summary proceedings in fashioning such relief."[146] Indeed, courts are encouraged to use

---

[141] *Id.*, ¶ 12.
[142] CRO ¶ 20, Docket No. 491, filed November 1, 2018.
[143] *Id.*, ¶ 13(a).
[144] *Id.*, ¶ 13(b).
[145] *Broadbent v. Advantage Software, Inc.*, 415 F. App'x 73, 78 (10th Cir. 2011) (quoting *SEC v. Vescor Capital Corp.*, 599 F.3d 1189, 1194 (10th Cir. 2010), and citing, among other cases, *SEC v. Elliott*, 953 F.2d 1560, 1569-70 (11th Cir. 1992); *see also FDIC v. Bernstein*, 786 F. Supp. 170, 177 (E.D.N.Y.1992) ("In keeping with this broad discretion, the use of summary proceedings in equity receiverships, as opposed to plenary proceedings under the Federal Rules of Civil Procedure, is within the jurisdictional authority of a district court.") (citations, quotation marks, and brackets omitted); *SEC v. Basic Energy & Affiliated Res.*, 273 F.3d 657, 668 (6th Cir.2001) (recognizing propriety of summary proceedings) (citing *Elliott*, 953 F.2d 1560); *SEC v. Sharp Capital, Inc.*, 315 F.3d 541, 545 (5th Cir. 2003) (same).
[146] *United States v. Fairway Capital Corp.*, 433 F.Supp.2d 226, 241 (D. R.I. 2006) (citations omitted).

summary proceedings because they decrease litigation costs and prevent further dissipation of receivership assets.[147]

The use of summary proceedings in federal receivership cases also extends to their use against nonparties. "For the claims of nonparties to property claimed by receivers, summary proceedings satisfy due process so long as there is adequate notice and opportunity to be heard."[148] In this instance, Glenda Johnson received adequate notice and availed herself of multiple opportunities to be heard. Indeed, she made four filings related to the Turnover Motion.[149] The fact that her arguments are rejected does not indicate she was not heard.

### iii.    There is no Claim-splitting

Additionally, Glenda Johnson's assertion that the Turnover Motion constitutes improper claim-splitting is incorrect. The Turnover Motion and the Receiver's lawsuit against Glenda Johnson do not seek recovery of the same real property. There is only one financial transfer in common between the two, the Receiver is pursuing different theories of recovery in the two different proceedings, and the Receiver will not be allowed to obtain a double recovery.[150]

---

[147] *Elliott*, 953 F.2d at 1566 (citations omitted).

[148] *CFTC v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1113 (9th Cir. 1999), *followed in  FTC v. Assail, Inc.*, 410 F.3d 256, 267 (5th Cir. 2005). *See also F.T.C. v. Johnson*, 567 F. App'x 512, 515 (9th Cir. 2014); *Glob. NAPS, Inc. v. Verizon New England, Inc.*, No. CV 02-12489-RWZ, 2015 WL 12781223, at *2 (D. Mass. Mar. 10, 2015); *CFTC v. Hudgins*, 620 F. Supp. 2d 790, 795 (E.D. Tex. 2009), aff'd sub nom. *Crawford v. Silette*, 608 F.3d 275 (5th Cir. 2010); *SEC v. Aquacell Batteries, Inc.*, No. 607CV-608-ORL-22DAB, 2008 WL 2915064,*4 (M.D. Fla. July 24, 2008); *SEC v. Merrill Scott & Assocs., Ltd.*, No. 2:02 CV 39, 2006 WL 3813300, at *4 (D. Utah Dec. 26, 2006); *SEC v. Credit Bancorp, Ltd.*, 124 F. Supp. 2d 824, 828 (S.D.N.Y. 2000).

[149] Opposition, Docket No. 784, filed October 11, 2019; Motion to Strike, Docket No. 805, filed November 26, 2019; Objection, Docket No. 890, filed March 24, 2020; Second Objection, Docket No. 930, filed May 22, 2020.

[150] The Receiver's separate lawsuit against the Receiver will also be heard by this Court. *See Klein v. Johnson*, Case No. 2:19-cv-625, Docket No. 9, filed Oct. 17, 2019. Additionally, the scheduling order was amended in that case to extend the deadline to amend the pleadings until 30 days after the Turnover Motion is decided. The Receiver will be required to amend the pleadings in *Klein v. Johnson*, Case No. 2:19-cv-625 to remove any duplicative claims.

**B.      The Undisputed Facts Set forth in the Turnover Motion are Admissible.**

The Receiver's Turnover Motion was accompanied by an *Appendix of Evidence in Support of Motion for Order Directing Turnover and Transfer of Real Properties Titled in the Name of Glenda Johnson and Funds in Accounts Controlled by Glenda Johnson* ("Appendix").[151] The Appendix identified the documents in support of the Turnover Motion and their sources. These documents were bank records, public records, accounting records created and maintained by Glenda Johnson (including her personal banking records), and property transaction records maintained by Glenda Johnson and delivered to the Receiver pursuant to Court order.[152]

Glenda Johnson opposed the Turnover Motion.[153] In her opposition, she objected to nearly every one of the Receiver's statements of undisputed facts on the basis of hearsay and lack of foundation.[154] Glenda Johnson's opposition did not dispute any of the substantive facts of the transfers and did not dispute the accuracy or authenticity of any of the documents cited by the Receiver in support of the Turnover Motion. The opposition was not supported by a declaration

---

[151] Docket No. 758, filed August 30, 2019.
[152] Order Regarding the United States' Motion for Order to Show Cause, Docket No. 676, filed May 24, 2019. The real property records delivered to the Receiver by Glenda Johnson were catalogued by the Receiver as being in box 24.
[153] Opposition, Docket No. 784, filed October 11, 2019.
[154] *Id*. at 3-18.

of Glenda Johnson disputing any of the facts relied on by the Receiver.[155] Instead, Glenda

Johnson argued only that the documents identified by the Receiver should not be considered.[156]

Glenda Johnson's nonspecific objections based on hearsay and lack of authentication fail

to comport with Federal Rule of Evidence 103(a)(1)(B), which requires that an objection to

evidence must "state[ ] the specific ground,"[157] or "in other words, explain why the proponent of

the evidence will have no way of authenticating it at trial (*e.g.*, lack of a competent witness to

testify about the document's creation)."[158] The only appropriate basis on which to raise an

evidentiary objection at the summary judgment phase is "that a fact *cannot* be presented in a

form that *would be admissible* in evidence."[159] Glenda Johnson's objections failed to meet the

requirements of Federal Rule of Civil Procedure 52(c)(2) and Federal Rule of Evidence

103(a)(1)(B).

Even if Glenda Johnson had properly objected to the evidence, the Receiver has

sufficiently established its admissibility for purposes of summary judgment. "At the summary

judgment stage, evidence need not be submitted in a form that would be admissible at trial, but

the content or substance of the evidence must be admissible."[160] "The requirement is that the

---

[155] The opposition did include a declaration by Glenda Johnson. That declaration did not dispute the authenticity of any of the documents cited by the Receiver. Rather, the declaration cited to a belatedly-produced document that purported to show that Glenda Johnson was owed $35 million by Receivership Entity Solstice. The Court has previously determined that this Solstice agreement is "not believable," Tr. Feb. 25, 2020 at 98:21, is "worthy of ridicule," and is a "pathetic fabrication." Civil Contempt Order Re: Neldon Johnson, Glenda Johnson, LaGrand Johnson, and Randale Johnson at 9 (¶13), Docket No. 947, filed July 6, 2020.

[156] The opposition also argued that some of the payments to Glenda Johnson were for wages owed or were her own personal funds, regardless of the timing, amounts, and uses of the transfers. *See* Opposition at 3, Docket No. 784, filed October 11, 2019.

[157]  Fed. R. Evid. 103(a)(1)(B).

[158] *SEC v. Mahabub*, No. 15-CV-2118-WJM-MLC, 2017 WL 6555039, at *2 (D. Colo. Dec. 22, 2017).

[159] Fed. R. Civ. P. 56(c)(2); *Mahabub*, 2017 WL 6555039, at *2 (emphasis in original); *see also Winskunas v. Birnbaum*, 23 F.3d 1264, 1267–68 (7th Cir.1994) (evidence need not be admissible in form—transcripts inadmissible at trial nevertheless may be considered for purposes of summary judgment—but must be so in content).

[160] *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 999 (10th Cir. 2019) (citations and quotation marks omitted).

party submitting the evidence show that it will be possible to put the information, the substance or content of the evidence, into an admissible form."[161]

The Receiver's reply asserts that the bank records, as authenticated by the attached declarations by bank custodians, are admissible as business records under Fed. R. Evid. 803(6); that the recorded deeds are admissible under Fed. R. Evid. 803(14); that the settlement statements are admissible under Fed. R. Evid. 803(15); that the QuickBooks records and checkbook registers are admissible as business records under Fed. R. Evid. 803(6); and that Glenda Johnson's deposition testimony is admissible under Fed. R. Evid. 801(1) and (2), as well as Fed. R. Civ. P. 32.[162]

Exhibits B,[163] C,[164] D,[165] and E[166] to the Reply consist of declarations from records custodians for the various financial institutions – Zions Bank, Bank of American Fork, Millard County Credit Union, and Wells Fargo – whose records are at issue. It is true that these exhibits don't identify the specific records sought to be authenticated except to say "the attached documents," or some similar phrase, without stating *which* documents were attached to the declarations. However, the nature of the documents on which the Receiver relies is consistent with the authenticating declarations. And Glenda Johnson has not provided any document contradicting the Receiver's documents, to cast any doubt on their authenticity.

In paragraph 4 of his own declaration (Exhibit F), the Receiver states that he "obtained the bank records attached to the Motion from: (1) Zions Bank, Wells Fargo Bank, Millard

---

[161] *Id.* at 999 n.15 (citations and quotation marks omitted).
[162] Docket No. 802, filed November 22, 2019 at 13-19 and Appendix, Docket 802-1.
[163] Docket No. 802-3, filed November 22, 2019.
[164] Docket No. 802-4, filed November 22, 2019.
[165] Docket No. 802-5, filed November 22, 2019.
[166] Docket No. 802-6, filed November 22, 2019.

County Credit Union, or Bank of American Fork; (2) the United States Department of Justice; and (3) Glenda Johnson."[167] The Receiver identifies in paragraph 5 the specific bank records which were delivered by Glenda Johnson (namely, Exhibits 11-3, 11-4, and 11-5), but does not identify the specific bank records he obtained from the Department of Justice or how the Department of Justice obtained whatever it passed on to him.

Authentication does not require that every document be supported by an affidavit.[168] Under Fed. R. Evid. 901, this evidence satisfies the authentication requirement by "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances."[169]

Bank documents were found sufficiently authenticated in *U.S. v. Turner* where, among other things, (1) they had "the official appearance of bank records" in (a) bearing bank insignia, (b) "contain[ing] the type of transaction data typically present on bank records," and (c) being "internally consistent in their appearance;" (2) "the contents of the documents provide[d] evidence of their authenticity" because, among other things, (a) many of them were reconciled with bank records the authenticity of which was not challenged, and (b) they "included information that was not widely-known, including [a defendant's] personal account information and aliases" (3) the circumstances in which they were obtained (seized from the defendant's home and office) supported their authenticity; and (4) although the government bears "the

---

[167] Docket No. 802-7, filed November 22, 2019.
[168] *Law Co. v. Mohawk Const. & Supply Co.*, 577 F.3d 1164, 1171 (10th Cir. 2009) (trial court committed error of law and therefore abused its discretion in disregarding documents that were not supported by authenticating affidavit "[b]ecause no authenticating affidavit is required").
[169] Fed. R. Evid. 901(b)(4); *Law Co.*, 577 F.3d at 1171.

burden to prove authentication, [the defendant] ha[d] not suggested any reason why the Court

should doubt the authenticity of the documents."[170]

Many of the same observations may be made about the bank documents at issue here.

These documents appear to be official bank records, bearing bank insignia, containing the type of

transaction data usually found on bank records, and being internally consistent. Their contents,

such as account numbers belonging to RaPower-3, LLC, Cobblestone Centre, L.C., and Glenda

Johnson, include information not widely-known. To the extent they were obtained from Glenda

Johnson (Exhibits 11-3, 11-4, and 11-5), this circumstance, together with the appearance and

contents of the documents, including their internal consistency, supports their authenticity.

Notably, Glenda Johnson does not challenge the accuracy of the balances shown in Exhibits 11-4

and 11-5.[171] The remaining bank documents obtained by the Receiver from a financial institution

or from the Department of Justice are consistent with documents or records obtained from

Glenda Johnson,[172] which she does not deny being able to authenticate at trial. Glenda Johnson

has not suggested any reason to doubt the authenticity of the bank records. Based on all of these

facts and circumstances, the authentication hurdle has been cleared for purposes of summary

judgment.

Further, for the same factual reasons, the bank records are admissible under the residual

exception to the rule against hearsay,[173] even if they do not qualify for the business records

exception. This was also the result in *Turner*. The checkbook registers, the QuickBooks records,

---

[170] *U.S. v. Turner*, 718 F.3d 226, 233 (3d Cir. 2013).

[171] Opposition at 18 (¶¶ 21-22), Docket No. 784, filed October 11, 2019.

[172] *Compare, e.g*., Exhibits 1 and 1-2 with 1-3 (apparently showing same $70,000 transaction); Exhibits 2 and 2-1 with 2-2 (apparently showing same $110,000 transaction); and Exhibits 11-1 and 11-2 with 11-3 (apparently showing same $200,000 and $1,945,500 transactions and confirmation numbers).

[173] Fed. R. Evid. 807; *Turner*, 718 F.3d at 234-35.

and the settlement statements are also admissible under the residual exception. The checkbook registers and QuickBooks records *were obtained from Glenda Johnson*.[174] Even if that is insufficient to authenticate them, she does not deny that she could do so at trial if called upon. Nor does she deny that she could authenticate the settlement statements, which are apparently signed by her, were produced by IAS in a box labeled as her property, and which were accompanied by cover sheets bearing her name and address. Under these circumstances, the Receiver is correct that the nature of the evidence submitted in support of the Turnover Motion[175] makes it admissible for purposes of summary judgment.

### C.    Glenda Johnson's Motion to Strike.

Glenda Johnson filed a motion to strike, arguing the Receiver improperly introduced new evidence in his reply memorandum and that the evidence submitted by the Receiver was inadmissible hearsay.[176] The Receiver opposed Glenda Johnson's motion to strike.[177] Glenda Johnson asserts two bases to strike the reply memorandum: first, because the reply memorandum purportedly goes beyond "rebuttal of matters raised in the memorandum in opposition;"[178] second, because the reply memorandum is allegedly overlength.

As an initial matter, Glenda Johnson's motion to strike, objecting to the evidence set forth in the reply memorandum is procedurally defective. The Court's rules are clear that when a party

---

[174] Declaration of Receiver at 4 (¶¶ 8-9), Docket No. 802-7, filed November 22, 2019; Declaration of the Receiver at 2-3 (¶¶ 8-9), Docket No. 883-1, filed March 16, 2020.

[175] In addition to the evidence already discussed, recorded deeds are admissible under rule 803(14). There can be little doubt that the Receiver would present certified copies of these documents at trial. And the deposition testimony is admissible under Fed. R. Evid. 801(1) and (2), as well as Fed. R. Civ. P. 32, although Glenda Johnson is a nonparty.

[176] Docket No. 805, filed November 26, 2019. Glenda Johnson incorrectly argued that the use of her sworn deposition testimony was inadmissible hearsay. *Id.* at 3.

[177] Docket No. 813, filed December 10, 2019.

[178] DUCivR 7-1(b)(2).

offers an evidentiary objection to material submitted on reply "[m]otions to strike evidence as inadmissible are no longer appropriate and should not be filed. The proper procedure is to make an objection."[179] Because Glenda Johnson failed to follow the proper procedure, the Court DENIES the Motion to Strike.

Even if the Motion to Strike were procedurally proper, Glenda Johnson's Motion to Strike lacks merit. Glenda Johnson correctly notes that under the local rules, a reply memorandum "must be limited to rebuttal of matter raised in the memorandum in opposition."[180] However, all of the evidence set forth in the reply memorandum was raised by the Receiver in rebuttal to Glenda Johnson's opposition. When Glenda Johnson asserted the evidence presented by the Receiver was inadmissible, the Receiver's submission of the additional evidence, made in rebuttal to the claim of inadmissibly, is permissible.[181] Declarations attached to a reply brief are proper and satisfy the moving party's burden to explain why the material is admissible if the non-moving party has made admissibility objections.[182] Because the Receiver's reply memorandum rebutted Glenda Johnson's opposition, and because the evidence included therein is admissible as stated above, the Motion to Strike is DENIED.

Glenda Johnson also asks the Court to strike the Receiver's reply memorandum because it purportedly exceeds the twenty-page limit for a reply memorandum under DUCiv 56-1(g). Glenda Johnson asserts the reply memorandum is twenty-three pages in length. To reach that

---

[179] DUCivR 7-1(b)(1)(B) (citing Fed. R. Civ. P. 56(c)(2)); *see also Navajo Nation Human Rights Comm'n v. San Juan Cty.*, 281 F. Supp. 3d 1136, 1159 (D. Utah 2017) (denying a motion to strike as improper).

[180] DUCivR 7-1(b)(2).

[181] *See* DUCivR 56-1(d).

[182] In a decision directly on point, this Court recently found that declarations and affidavits were property submitted by a moving party in response to a nonmoving party's objection that materials attached to a summary judgment motion were inadmissible on the basis of hearsay and lack of foundation. *See Stella v. Davis Cty.*, No. 1:18-CV-002, 2019 WL 4601611, at *4, fn. 5 (D. Utah Sept. 23, 2019).

conclusion, however, Glenda Johnson counts the case heading, the signature block, and the certificate of service. Those items are specifically excluded from the page limitation under DUCivR 56-1(g).[183] Glenda Johnson's claim that the reply memorandum is overlength lacks any factual basis and her motion to strike is DENIED.

### D. Glenda Johnson's Objection.

The Court issued an order on March 2, 2020 inviting the Receiver to "point the court to material in the record authenticating" 12 of the checkbook registers and property settlement statements submitted by the Receiver as exhibits in support of his Turnover Motion.[184]

On March 16, 2020, the Receiver submitted an authentication of exhibits, including an additional declaration by the Receiver regarding the 12 documents identified by the Court.[185] The Receiver provided authentication for the requested exhibit by submitting a declaration explaining how he acquired the settlement statements and checkbook registers.[186] The settlement statements were delivered to the Receiver by IAS "in a box labeled 'Glenda E. Johnson's Property's [sic].'"[187] "Each of the settlement statements attached as exhibits appear[s] to have been signed by Glenda Johnson" and "was also accompanied by a cover sheet appearing to be on Glenda Johnson's letterhead."[188] The QuickBooks records were provided to the Receiver by Glenda Johnson, who was the bookkeeper of IAS and RaPower, and the apparent author of

---

[183] DUCiv 56-1(g) ("This limitation excludes the following items: face sheet, table of contents, table of authorities, signature block, certificate of service, and appendix.").
[184] Docket No. 866, filed March 2, 2020.
[185] Docket No's. 883 and 883-1, filed March 16, 2020.
[186] Authentication of Exhibits, Docket No. 883, filed March 16, 2020.
[187] Declaration of the Receiver at 2 (¶ 4), Docket No. 883-1, filed March 16, 2020.
[188] *Id.* at 2 (¶¶ 5-7).

them.[189] Glenda Johnson also produced the checkbook registers, and again, she is the apparent author.[190]

That declaration provided the necessary foundation for admission of the settlement statements and checkbook registers that Glenda Johnson furnished to the Receiver pursuant to orders of this Court. Glenda Johnson objected to the Receiver's authentication, repeating her arguments that the Receiver's efforts to authenticate and lay foundation for admission of evidence should fail because Glenda Johnson was not a party to this case.[191]

The Receiver, however, does not merely rely on the fact that Glenda Johnson produced the documents to authenticate the documents. The Receiver has authenticated the documents based upon the contents and internal patterns of the documents. As previously explained, under Rule 901, "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances" can be sufficient to authenticate the documents.[192] The dollar amounts listed in the respective settlement statements and checkbook registers match the dollar amounts and time frames identified in the bank account statements, which were also submitted and authenticated by the Receiver. The settlement statements also contain distinctive characteristics that demonstrate the documents are what the Receiver claims. Each settlement statement is printed on the letterhead of a title company, including First America Title Company, LLC and United Title Services.

---

[189] Declaration of Receiver at 4 (¶¶ 8-9), Docket No. 802-7, filed November 22, 2019; Declaration of Neldon Johnson at 22-23 (¶ y), Docket No. 738, filed August 2, 2019.
[190] Declaration of the Receiver at 2-3 (¶¶ 8-9), Docket No. 883-1, filed March 16, 2020.
[191] Docket No. 890, filed March 24, 2020.
[192] Fed. R. Evid. 901(b)(4).

Additionally, the Receiver can authenticate the documents through the testimony of Glenda Johnson. The Receiver can call Glenda Johnson to testify as to the authenticity of the settlement statements and checkbook registers, which satisfies the requirements under Rule 901(b)(1). Glenda Johnson produced these settlement statements and check registers to the Receiver. Not once in her opposition to the Turnover Motion, the Motion to Strike, nor the Objection does Glenda Johnson attempt to object to the Exhibits in any substantive way or claim that the records lack trustworthiness or cannot be authenticated.

###   E.   The Alleged Contract between Solstice and Glenda Johnson Does Not Create Issues of Fact.

Glenda Johnson argues there are disputed issues of fact regarding whose funds were used to purchase the properties because she alleges the funds were paid to her pursuant to an alleged contract between Solstice and Glenda Johnson related to the construction of solar towers to be used in connection with the abusive solar scheme.[193] Glenda Johnson attached an alleged contract to her declaration.[194] The purported contract, however, does not create issues of fact. Instead, this alleged contract is further proof that the fraudulent scheme was to personally enrich Neldon Johnson and his family.

First, the alleged contract is unenforceable because it is in furtherance of the solar energy scheme and massive tax fraud. One who has "participated in a violation of law cannot be permitted to assert in a court of justice any right founded upon or growing out of the illegal transaction."[195] This rule is not limited to contracts that are illegal because of their subject

---

[193] An example of a solar tower can be found at Docket No. 467 at 3.
[194] Declaration of Glenda Johnson, Docket No. 784-1, filed October 11, 2019.
[195] *Sender v. Simon*, 84 F.3d 1299, 1307 (10th Cir. 1996).

matter, *e.g.,* a contract to manufacture illicit narcotics.[196] Instead, "[a] bargain may be illegal by reason of the wrongful purpose of one or both of the parties making it. This is true even though the performances bargained for are not in themselves illegal . . .  A party who makes such a bargain in furtherance of his wrongful purpose can not enforce it...."[197]

Next, the Court has previously found that this alleged contract is "not believable,"[198] is "worthy of ridicule," and is a "pathetic fabrication."[199] Glenda Johnson has failed to show that she provided any consideration for the monies purportedly owing to her. There is no evidence of a bargained for exchange and it is hard to imagine what consideration Glenda Johnson could provide Solstice or RaPower that would merit the payment of $35 million for the construction of solar towers—which, under the terms of the alleged contract, she was not paying to construct.

Finally, notwithstanding that the contract is unenforceable and unbelievable, Glenda Johnson could not have used funds she purportedly received from the alleged contract for many of the Real Property transactions because the transactions took place before the effective date of the contract or because the funds transferred to Glenda Johnson for the real estate purchases were from Cobblestone bank accounts and not from RaPower or Solstice.

### F.      Glenda Johnson's Second Objection.

Glenda Johnson also objects that the above Section E "is superfluous to the findings and decision of the court as to this motion and should be stricken because of the certainty that the Receiver will use this conclusion in the pending collection case against Mrs. Johnson."[200] She

---

[196] *Id.*
[197] *Id.* (quoting *Tri–Q, Inc. v. Sta–Hi Corp.,* 63 Cal.2d 199, 45 Cal.Rptr. 878, 890, 404 P.2d 486, 498 (1965)).
[198] Tr. Feb. 25, 2020 98:21.
[199] Civil Contempt Order Re: Neldon Johnson, Glenda Johnson, LaGrand Johnson, and Randale Johnson at 9 (¶13), Docket No. 947, filed July 6, 2020.
[200] Second Objection at 2, Docket No. 930, filed May 22, 2020.

argues that she has a due process right to fully litigate the fraud question (already tried in this litigation) before her property rights can be affected.

Section E is not superfluous. It resolves an issue Glenda Johnson raised in response to the Turnover Motion (i.e., the validity of her purported $35 million contract). Although this resolution was reached during summary judgment proceedings, her due process rights were not impaired as she was given the right to be heard and as it is well-established that summary judgment may be granted "if the evidence is such that no reasonable jury could return a verdict for the nonmoving party."[201]

Glenda Johnson also argues that the Findings of Fact and Conclusions of Law[202] previously entered in this case are "without a basis in law or fact."[203] She asserts that, in a separate tax court proceeding, the government (IRS) has changed its position on the solar energy technology at issue. Specifically, she says that "the IRS expressly conceded in the Tax Court that the solar lenses qualify as solar energy property under the IRS code and regulations" and "that the lenses qualify for tax credits but may be limited to passive income, depending on the taxpayer's circumstances."[204] None of the excerpts she quotes from the Tax Court proceedings support this alleged concession.

She also maintains that a key government witness, Dr. Thomas Mancini, changed his testimony regarding the technology, acknowledging – in contrast to his trial testimony in this case – that the Johnson Fresnel solar lenses are capable of being used to generate electricity.[205]

---

[201] *Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1062 (10th Cir. 2002) (citation and quotation marks omitted).
[202] Docket No. 467, filed October 4, 2018.
[203] Second Objection at 4, Docket No. 930, filed May 22, 2020.
[204] *Id*.
[205] *Id*. at 7-9.

The quoted excerpts of Dr. Mancini's testimony in Tax Court as to the technology's potential do seem to be somewhat at odds with his testimony here "that the IAS solar technology will never be a commercial solar energy system producing electrical power or any other form of useful energy" and that "it will never be a commercial system or will ever produce electricity or any other useable form of energy."[206]

However, Dr. Mancini's testimony that the technology would not produce electricity was clearly qualified. He did not state that the system could never produce electricity at all, but that it would not "be a commercial solar energy system." In Tax Court, he did acknowledge that, under certain conditions (including putting "the right team on it" and "really invest[ing] the money in it"), "you could probably make something that would generate electricity using the concept as it stands."[207] But he immediately went on to explain as follows: "Now, could it -- what [sic] it compete in commercial marketplace was really the issue I was going after, and I don't think it would."[208] He further said that he was "not clear that if you did the upfront work that you needed to do [to generate electricity] that you would ever do that work, because you'd know right away this is not going to make the cost work."[209] Thus, his testimony in the two proceedings can be largely, if not entirely, reconciled.

### G.    Turnover and Transfer of Receivership Assets is Appropriate Here.

The Receivership Order allows the Receiver to seek "legal and equitable relief" such as disgorgement of profits, asset turnover . . . and such other relief from this Court as may be

---

[206] *Id*. at 9.
[207] Docket No. 964-6 (Tax Court Tr. Vol. 3 at 516:15-18), filed July 13, 2020.
[208] *Id*. at 516:19-21.
[209] *Id*. at 517:3-6; *see also id*. at 519:24-520:25 (explaining cost inefficiency in design that could technically produce electricity).

necessary to enforce this Order."[210] Federal district courts may order equitable relief, such as turnover, even against a person who has not been found to have participated in the wrongdoing[211] where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds.[212]

The CRO also expressly allows the imposition of constructive trusts.[213] Under Utah law, "[a] constructive trust is an equitable remedy to prevent unjust enrichment."[214] "Courts recognize a constructive trust as a matter of equity where there has been (1) a wrongful act, (2) unjust enrichment, and (3) specific property that can be traced to the wrongful behavior."[215] "Unjust enrichment occurs when the moving party has an 'equitable interest' in the property it seeks a constructive trust over."[216]

The Receiver has demonstrated that he is entitled to an order directing Glenda Johnson to turn over the Real Properties and funds in the Bank of American Fork Accounts because: (1) the funds used to purchase the Real Properties and the funds in the Bank of American Fork Accounts, which are directly traceable to Receivership Entity bank accounts, are ill-gotten; and

---

[210] Docket No. 491, ¶ 60.

[211] Glenda Johnson was not a defendant in the underlying action. The Receiver investigation, however, has shown that she was an active participant in the fraudulent scheme. *See* e.g., *Receiver's Third Quarterly Status Report*, Docket No. 724, filed July 18, 2019. The Court also has found Glenda Johnson to be in contempt of the CRO. Docket No. 701, filed June 25, 2019.

[212] *See* *SEC v. Cavanagh*, 155 F.3d 129, 136 (2nd Cir. 1998) ("Federal courts may order equitable relief against a person who is not accused of wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds"); *SEC v. George*, 426 F.3d 786, 798 (6th Cir. 2005) (upholding disgorgement order directing gift recipient to return assets purchased with money derived from defendants fraudulent scheme); *see also* *CFTC v. Hudgins*, 620 F. Supp. 2d 790, 795 (E.D. Tex. 2009), aff'd sub nom. Crawford v. Silette, 608 F.3d 275 (5th Cir. 2010) (finding that receiver was authorized to obtain equitable lien on homeowner's condominium paid for by Ponzi scheme proceeds).

[213] Docket No. 491, ¶ 60.

[214] *United States v. Talmage*, No. 1:16-CV-00019-DN, 2019 WL 2248546, at *4 (D. Utah May 24, 2019) (quoting *In re Estate of Hock*, 655 P.2d 1111, 1114 (Utah 1982).

[215] *Id.*, (quoting *Wilcox v. Anchor Wate, Co.*, 2007 UT 39, ¶ 34, 164 P.3d 353).

[216] *Id.*, (quoting *Lodges at Bear Hollow Condominium Homeowners Ass'n, Inc. v. Bear Hollow Restoration, LLC*, 344 P.3d 145).

(2) Glenda Johnson has no legitimate claim to the funds used to purchase the Real Properties or the funds in the Bank of American Fork Accounts. Specifically, the Court has already determined that the abusive solar scheme promoted by Receivership Defendants was a "massive tax fraud" that unjustly enriched Neldon Johnson and his family[217] with ill-gotten funds, such that the gross receipts of Receivership Entities were ordered disgorged, and all assets were required to be turned over to the Receiver.[218] As shown by the undisputed facts, the funds used to purchase the Real Properties and the funds in the Bank of American Fork Accounts can be directly traced as coming from Receivership Entity bank accounts.[219] Moreover, the alleged contract between Solstice and Glenda Johnson does not provide a legitimate claim to any of the funds used to purchase the Real Properties or the funds in the Bank of American Fork Accounts.

The Receiver has also demonstrated that he is entitled to a constructive trust over the Real Properties and funds in the Bank of American Fork Accounts because: (1) the "massive tax fraud" promoted by Receivership Defendants was a wrongful act; [220] (2) Neldon Johnson and his family, including Glenda Johnson, were unjustly enriched by the tax fraud;[221] and (3) the funds used to purchase the Real Properties and the funds in the Bank of American Fork Accounts can be directly traced as coming from Receivership Entity bank accounts and are, therefore, wrongful proceeds.[222]

---

[217] *See* Affiliates Order, Factual Findings ¶ 2, Docket No. 636 (citing *Findings of Fact and Conclusions of Law*, Docket No. 467, filed October 4, 2018.

[218] *See Memorandum Decision and Order Freezing Assets and to Appoint a Receiver*, Docket No. 444, filed August 22, 2018; *see also* Affiliates Order, Docket No. 636, filed May 3, 2019.

[219] *See* Facts, ¶¶ 1-11, *supra*.

[220] *See* Affiliates Order, Factual Findings ¶ 2, Docket No. 636 (citing *Findings of Fact and Conclusions of Law*, Docket No. 467, filed October 4, 2018).

[221] *Id*.

[222] *See* Facts, ¶¶ 1-11, *supra*.

Because the Real Properties and all funds in the Bank of American Fork Accounts are Receivership Property, all appreciation that may have occurred since each purchase of Real Property and all interest that has accrued on funds in the Bank of American Fork Accounts are also Receivership Property.

## IV.    ORDER

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT** the Receiver's Turnover Motion [223] is **GRANTED**, Glenda Johnson's motion to strike[224] is **DENIED**, Glenda Johnson's Objection[225] is **OVERRULED, and Glenda Johnson's Second Objection[226] is OVERRULED**.

IT IS FURTHER ORDERED THAT:

1.      Within three days of this order, Glenda Johnson shall transfer to the Receiver the $1,206,621.39 from her personal bank account at Bank of American Fork (#2790),[227]along with all interest that has been earned on those funds since August 3, 2019 and the $200,419.14 from the Bank of American Fork account in the name of her parents (#8749), along with all interest that has been earned on those funds since August 3, 2019.

2.      Within seven days of this order, Glenda Johnson shall provide to the Receiver and file with the Court a declaration under oath listing all damage, other than ordinary wear and tear, that existed as of June 22, 2018 on any of the real properties that are the subject of the Turnover Motion (*i.e.*, HD-3511, HD-3511-1, DO-4568-1, MA-2662-B, HD-4606-2, HD-4606-2-1, HD-

---

[223] Docket No. 757, filed August 30, 2019.
[224] Docket No. 805, filed November 26, 2019.
[225] Docket No. 890, filed March 24, 2020.
[226] Docket No. 930, filed May 22, 2020.
[227] The Court notes that the Bank of American Fork is now known as Altabank.

4648, 51:468:0132, DO-SS-136&137, 4805, 4806-A, 4806-B, and 2842-027-174) ("Turnover Properties").

    3.      Within 14 days of this order, Glenda Johnson shall sign documents requested by the Receiver transferring title to the Turnover Properties to the Receiver along with any water rights related to the Turnover Properties.[228] These documents shall be prepared by the Receiver and delivered to Glenda Johnson's counsel within ten days of this order.

    4.      Glenda Johnson is ordered to ensure that, with two exceptions, all occupants of the Turnover Properties vacate the Turnover Properties forthwith and deliver to the Receiver all keys for each of those properties. The occupants of the Payson condominium (APN #51:468:0132) may have up to 21 days from this order to vacate the Payson condominium. Glenda Johnson may choose to have up to 21 days from this order to remain in either the Sherwood Drive home (APN #DO-SS0136&137) or the West Mountain home (APN #55:718:0006). She shall notify the Receiver, in writing, within three days of this order which of these two homes she will remain in for up to 21 days.

    5.      The Receiver is authorized to immediately take possession of all Turnover Properties with the two exceptions noted in the prior paragraph. This includes the power and authority to change locks and control access to the Turnover Properties. Glenda Johnson, Neldon Johnson, LaGrand Johnson, and Randale Johnson are specifically prohibited and enjoined from entering the premises of any of the Turnover Properties after the date of this order, except for the two exceptions granted in paragraph [ 4 ] or except with written permission of the Receiver. Counsel for Glenda Johnson, Neldon Johnson, LaGrand Johnson, and Randale Johnson are

---

[228] These water rights specifically include #68-2388 and #51-7009.

directed to provide notice of this order within three days to Glenda Johnson, Neldon Johnson,

LaGrand Johnson, and Randale Johnson and confirm to the Receiver the dates on which the

notice was delivered to each of those clients.

6.      The Receiver may, in writing and in his sole discretion, extend the time to vacate.

If any person fails or refuses to vacate the Turnover Properties by the date specified in this order,

or as extended by the Receiver , the Receiver is authorized to coordinate with the United States

Marshals Service to take all actions that are reasonably necessary to have those persons ejected

or excluded.  The United States Marshals Service is authorized and directed to take any and all

necessary actions, including but not limited to the use of reasonable force, to enter and remain on

the premises, which includes, but is not limited to, the land, buildings, vehicles, and any other

structures located thereon, for the purpose of executing this order.  The United States Marshals

Service is further authorized and directed to arrest or evict from the premises any persons who

obstruct, attempt to obstruct, or interfere or attempt to interfere, in any way with this order.

7.      All furnishings, vehicles (except for the 2016 Chrysler 300), equipment, tools,

supplies, records, and inventory (including plastic lenses) located at or on any of the Turnover

Properties as of April 22, 2020 shall be retained on the premises of the Turnover Properties. An

exception is granted for personal clothing, personal care items, personal effects, food, kitchen

utensils, and animals. Glenda Johnson shall provide to the Receiver within 28 days of the date of

this order a list in reasonable detail of all items removed from each of the Turnover Properties

other than clothing, personal care items, personal effects, food, kitchen utensils, and animals.

With written permission of the Receiver, Glenda Johnson may remove other items that the

Receiver deems of no value to the Receivership Estate or where Glenda Johnson demonstrates to

the satisfaction of the Receiver that the item was purchased with funds other than from Receivership Entities. If the Receiver denies a request by Glenda Johnson to retain items, she may make motion to the court for resolution of the dispute.

8.      Any personal clothing, personal care items, personal effects, food, kitchen utensils, and animals remaining on the Turnover Properties twenty-one days after the date of this order, or as extended in writing by the Receiver, is deemed forfeited and abandoned, and the Receiver is authorized to dispose of it in any manner he sees fit, including sale, in which case the proceeds of the sale are to be applied first to the costs and expenses of sale and the balance paid to the Receivership Estate.  This order shall also serve as a Writ of Assistance or Writ of Possession, as appropriate, and no further order from the Court shall be required for these purposes.

9.      Up until the date that Glenda Johnson and any other tenants vacate the Turnover Properties as required by this order, Glenda Johnson and any other tenants of the Turnover Properties shall take all reasonable steps necessary to preserve the Turnover Properties (including all buildings, improvements, fixtures and appurtenances on the Turnover Properties) in their current conditions, and all occupants of the Turnover Properties shall neither commit waste against the Turnover Properties nor cause or permit anyone else to do so.  Glenda Johnson as well as others related to her, including Neldon Johnson, LaGrand Johnson, Randale Johnson, shall neither do anything that tends to reduce the value or marketability of the Turnover Properties nor cause or permit anyone else to do so.  Such persons shall not record any instruments, publish any notice, or take any other action (such as running newspaper advertisements, posting signs, or making internet postings) that may directly or indirectly tend to

adversely affect the value of the Turnover Properties or that may tend to deter or discourage potential bidders from expressing or pursuing interest in the Turnover Properties, nor shall they cause or permit anyone else to do so.  Violation of this paragraph shall be deemed a contempt of court and punishable as such.

10.     Glenda Johnson is required to ensure that any insurance on any Turnover Property that was in place on April 22, 2020 is not canceled or refunded. Within 14 days of the date of this order, Glenda Johnson shall provide to the Receiver copies of all insurance policies on Turnover Properties and information about the status of those insurance policies (including the expiration dates of the policies and the identity of the insurance agents who service those policies).

11.     The Receiver is directed to retain $100,000.00 from the sale of DO-4568-1 in reserve, pending resolution of the Receiver's separate lawsuit against Glenda Johnson.[229] The Receiver shall not expend those funds or transmit them to the United States Treasury absent consent of Glenda Johnson or further order of this Court.

12.     Within 28 days of this Order, the Receiver shall file a proposed amended complaint in his separate lawsuit by Glenda Johnson, removing any claims or prayers for relief that duplicate relief granted to the Receiver by this order.

13.     In the event the Receiver or the United States determines that Glenda Johnson, Neldon Johnson, or any other person acting on her or their behalf has failed to comply with any portion of this order or has interfered with the Receiver's actions to take possession of the Turnover Properties or funds in Glenda Johnson's bank accounts, the Receiver or the United States shall file a notice of non-compliance with the Court. Upon the filing of a notice of non-

---

[229] 2:19-cv-625 (D. Utah).

compliance, the Court may, depending on the severity of the asserted non-compliance or its asserted consequences, issue a bench warrant for the person for incarceration until the Court holds a hearing on the matter.

SIGNED September 14, 2020.

BY THE COURT:

David Nuffer
United States District Judge